JOHN HYDE v. THE STATE.

There is no doubt that since D'Eon's case, it has been the settled common law practice, (in applications for continuances in criminal cases) to receive counter affidavits, to show want of diligence and the absence of any reasonable expectation that the proposed testimony can be obtained at all, or at the time to which it is proposed to postpone the trial.

But affidavits to contradict the general oath of materiality, seem not to have been often received.

In the administration of the criminal law, the common law, where not modified by the constitution or statutes, has been held to furnish the rule of decision, as well in matters of practice, as principle.

To entitle a party to the postponement of the trial on account of the absence of witnesses, according to the common law, the rule being the same in civil and criminal cases, three things are necessary :

1st. To satisfy the Court that the persons are material witnesses.

2nd. To show that the party applying has been guilty of no laches nor neglect.

3rd. To satisfy the Court that there is reasonable expectation of his being able to procure their attendance at the future time to which he prays the trial to be put off.

And the practice is not materially altered by our statute.

It is not a sufficient answer to an application for a continuance on account of the absence of a witness, which states what the defendant expects to prove, in a criminal case, to offer to admit that the witness, if present, would testify to the facts stated.

Merely causing a witness to be subpoenaed in due time, is not all the diligence which is required of the defendant in a criminal case ; if the witness fails to attend, an attachment should be obtained as soon as his absence is discovered, or would be discovered by proper diligence ; which would ordinarily be on the first day of the Term.

If, upon trial, there had appeared to be cause to apprehend that a continuance was improperly refused, a new trial must have been granted. But if, on the contrary, it very satisfactorily appears that the application for a continuance could not have been well founded in fact, it must afford an additional reason for refusing a new trial and for refusing to reverse the judgment on the ground that the continuance was refused.

It is good challenge to a juror for cause, on the part of the State, in a capital case, that he has conscientious scruples against finding a prisoner guilty where the punishment is death.


Appeal from Harris.    Tried before the Hon. Peter W. Gray.

Indictment presented June 14th, 1855, for murder of Charles Butler. Returned, defendant arrested same day. Tried at Fall Term, 1855, and convicted. There was a bill of exceptions to the ruling of the Court on an application for a continuance, as follows : Be it remembered, &c., the defendant moved the Court to grant him a second continuance, and in support thereof his affidavit marked A : That he cannot go safely to trial at this Term, for the want of testimony material to the case, and that he has used due diligence to procure the same by causing subpoenas to be issued for Milly Hyde, Newton Hyde and Jasper Hyde, and by sending word to Elizabeth Ann Fogle and Hiram Fogle, of the State of Arkansas, to come here as witnesses ; that one of said Fogles, to wit: Hiram, is dead, and that a subpoena has been served upon Milly Hyde,

who resides in the County of Travis, and that he has been informed and believes that the said Newton and Jasper Hyde have also been subpoenaed; yet, he says, there is no return of its execution, as yet, among the papers of this case; and defendant further says that he expects to prove by each of said witnesses, that he did not kill the said Butler, but that it was his brother, Benjamin Hyde, who killed him. Defendant says that he used all the diligence in his power to be used, to procure the attendance of said witnesses, by causing said writs of subpoena to be issued for those living in this State; that the said Milly Hyde resides in the county of Travis, and that the said Newton and Jasper Hyde did also and now do, unless they have very recently removed; that they are absent without this defendant's procurement or consent, and to his great peril; that he cannot further state the cause of their absence, being ignorant thereof; that he knows of no other person by whom he can prove the same facts; that he expects to be able to procure their attendance by the next Term of this Court; that the said E. A. Fogle, according to the best of defendant's information and belief, is now on the way to attend this trial, and the only reason that this defendant can conjecture, concerning the absence of said witness, is a temporary want of money to defray the travelling expenses; and defendant further says, that although he is and has been since his confinement here, without money, yet he has availed himself of all the exertions known to him to prepare this cause for trial, at this Term of the Court; and that this continuance is not sought for delay, but that justice may be done; that said subpoenas were caused to be issued by him, through his counsel; and he refers to the papers in this case, and also to his former affidavit for reference, and makes the same a part of this affidavit; and defendant further asks that an attachment may be issued for the said Milly Hyde, to enforce her attendance, and also that of the other witnesses. Defendant says that the subpoena for the said Milly Hyde, Newton and Jasper Hyde

were issued on the 30th October, 1855, as will appear by the record, and that double sets of the same were issued for said witnesses ; that said subpoenas were issued to the Sheriff of Travis County, where the said Milly resides, and where also the said Jasper and Newton resided, as defendant had no doubt.    Sworn to December 19th, 1855.

The affidavit for a continuance, of the previous Term, was on account of the absence of Newton and Jasper Hyde, for whom, it was stated, subpoenas had been issued to Bastrop County, where, it was stated, said witnesses resided ; and also on account of the absence of Milly Hyde, who, it was stated, resided in Austin County, whither, it was stated, a subpoena had been sent for her.    Said affidavit stated that defendant expected to prove by each of said witnesses, " that they were " present at the time that Butler, for whose murder defendant " stands charged, was killed, and that said Butler was not " killed by this defendant, nor was he fired upon by this de- " fendant, but that said Butler was killed by one Benjamin " Hyde, who was the brother of this defendant, and while the " said Butler and defendant's said brother were in a very an- " gry quarrel, and at a moment when the said Butler had his " hatchet raised within striking distance to have killed depo- " nent's said brother, and with that intent," &c., &c.

The subpoena for Milly Hyde was returned by the Sheriff of Travis County, served on the 26th of September.

Whereupon the State, by her attorney, proposed a counter affidavit of one Joseph J. Young ; and also to admit that Milly Hyde, the only witness subpoenaed by defendant, would, if present, testify the facts set forth in defendant's affidavit, to the hearing or receiving of which counter affidavit the defendant, by counsel, objected, which objection was overruled, and the affidavit heard as follows : That he has ridden over Bastrop and Travis Counties in this State, and made diligent enquiry and search for Jasper Hyde and Newton Hyde, the witnesses named in the affidavit of the defendant for a continu

ance of the above stated case, and could find no such person in either of the said counties; two lads or boys, bearing such names, were formerly in said counties, but are not there now. Affiant was informed by the step-mother of said boys or lads, that she was told a man came where they were residing and removed them to parts unknown; and by diligent enquiry of said step-mother and the neighbors around where the said boys formerly resided, affiant was unable to gain any intelligence as to their whereabouts—the step-mother and neighbors all declaring that they had no knowledge of their present whereabouts. Affiant further declares that it is the opinion of the neighbors around where said boys formerly resided, as well as of their step-mother, that they have been removed to the State of Arkansas, beyond the jurisdiction of the Courts of Texas, where their mother resides. Affiant further avers that said lads or boys are the reputed children of Ben Hyde, a brother of defendant, and that their reputed step-mother is Milly Hyde, the other witness named in his affidavit for a continuance. Affiant further states, that he saw Milly Hyde on the 8th day of the present month and endeavored to procure her attendance here at the trial of this defendant during the present Term, but she refused to come to Court, alleging as a reason for such refusal, that all she knew about the charge, was against the defendant, and she feared if she testified and he should be acquitted, he, the defendant, would afterwards take her life for so doing.

To which defendant, by counsel, excepted; and after consideration of the affidavits of defendant, and the record in this case, and the said counter affidavit, and all the circumstances of the case, the Court not being satisfied that the facts alleged by the defendant were true, and it not appearing that due diligence had been used to procure the attendance of witnesses, nor that there was a reasonable ground to expect their attendance at another Term; and considering the admission of the facts to be proved by Milly Hyde, as aforesaid, overruled the

Vol. XVI. 29

motion for a continuance and ordered the trial to proceed; to which ruling the defendant, by counsel excepted, &c.

The Term of Court had commenced on the 10th of December, and no application for an attachment for Milly Hyde had been made. The case was called for trial on the 19th. The counsel of defendant had been appointed at the previous Term of the Court, except Mr. Henderson, who was appointed on the 15th of December.

There was a bill of exceptions, also, to the allowance of challenge for cause to five of the jurors summoned on the special venire, on the ground that in answer to questions on their *voir dire*, they stated they had conscientious scruples against finding a verdict of guilty, where the punishment was death.

It appeared from the testimony of three persons who were present, that while the defendant's brother, Ben Hyde, was cursing Butler for putting up his own fence, (it being convenient for the Hydes to come from the woods over part of Butler's lot, with their wagon) and just as Ben Hyde had turned to walk away, being ten paces distant from Butler, the defendant walked from the house, a distance of fifty yards or more, to within a few steps of Butler, and shot him, from which he died about an hour afterwards. This was in 1853. It appeared, from the evidence, that Ben Hyde had been killed since the killing of Butler. It was also in evidence, that the defendant, being arrested in Arkansas on a charge of killing Levi Young in Bastrop County, declared of his own accord that he had killed Butler, but that he was innocent of the charge of killing Young. It also appeared from the evidence, that the defendant had been a fugitive from justice, since the killing of Butler.

*J. W. Henderson,* for appellant. I. The counter affidavit ought not to have been received. In criminal cases the accused has a right to be confronted with the witnesses against him. He had no opportunity to cross-examine the witness

who made the counter affidavit. (Cloud v. Smith, 1 Tex. R. 611 ; Bill of Rights, Sec. 8.) The only adjudicated cases in which a counter affidavit has been allowed, in a criminal case, are Smith's case, 3 Wheel. Cr. Cas. 172, 176, and D'Eon's case, 3 Burr. 1415 ; but in those cases the party had made no effort to procure the attendance of the witnesses, and there was no reasonable expectation that they could be obtained, the witnesses not being within the jurisdiction of the Court. See Callen v. Kearney, 2 Cow. 529.

II. When a subpoena has been served and disobeyed, the trial will be put off until an attachment is issued and time given for its execution and return. (The People v. Bush, 1 Wheel. Cr. Cas. 137 ; The People v. Brigham, 1 Cit. H. Rec. 30.)

III. The statute prescribes what shall be sufficient on a first and second application for a continuance. In Prewitt v. Everett, 10 Tex. R. 283, this Court decided that if the affidavit contains the requirements of the statute, the Court has no discretion, but the continuance must be allowed.

IV. The defendant could not know that Milly Hyde, who had been subpoenaed would not be in attendance, until the trial ; and until then she could have no attachment. And he was entitled, under the bill of rights, to compulsory process, to enforce her attendance.

*C. B. Sabin*, also, for appellant. The admission that if Milly Hyde was present as a witness, she would testify as follows, (see record, page 36,) was not an unqualified admission of the facts ; and it was the prisoner's right to have the personal attendance of the witness before the jury. The manner and mode, in which the witness gave her testimony, was a right the prisoner had, by the law to have her appear before the jury. (Lorrat v. Colear, 1 Martin R. 78 ; The People v. Vermilyea, 7 Cow. 369, 388, 399 and 400.)

The Court erred in sustaining the peremptory challenge of the jurors for conscientious scruples. There is no statute allowing it.

*Attorney General* for appellee. The affidavit of Young was properly received. (Payne v. Ogden, 5 Cow. 15 ; People v. Vermilyea, 7 Id. 369.) And the admission by the State of all that defendant claimed for Milly Hyde's testimony certainly left the application in question without any ground to stand upon. The propriety of forcing a party to accept such an admission, I know, was more than questioned by two of the Judges in the case of People v. Vermilyea, et al, before cited, but it was admitted and sustained by argument and authority by another Judge (Sutherland) in the same case. When attended, as in this case, by other circumstances of suspicion, that the application was made for delay, a delay of the trial of this defendant which had already been extended for three years, and entirely by his fault in fleeing and staying away from the country for nearly that length of time before he could be called upon for trial at all, and when at last he was brought to justice it was by no volition of his, but because he happened to be brought back upon a charge for another offence. When thus at last brought to the bar of justice to answer upon this charge he asked and obtained a postponement of the trial for six months, to enable him to procure the testimony of his sister-in-law and two nephews, living, as he swears, but three or four days' ride from the place of trial.— At the end of six months' delay, his witnesses are still absent. Now two or three of the most material of the witnesses for the State appear to reside as far from the place of trial as he swears his do, and if he is to be indulged in the continuance claimed, under the circumstances here presented, when will it happen that both parties will be ready for trial ? It may be answered that the defendant will be ready for trial when he has worn out, or finds absent, the witnesses of the State which holds the affirmative, or the case would be ended when he has obtained time enough to find a chance of escaping from prison.

WHEELER, J. The rules governing applications for the con-

tinuance of causes, are, in general, the same both in civil and criminal cases. (Rex v. D'Eon, 1 W. Bl. 515, 3 Burr. 1415 ; State v. Lewis, 1 Bay, 1, 2 ; The People v. Vermilyea, 7 Cow. 369.) The statutory provisions on the subject do not seem to be materially variant. (Hart. Dig. Art. 815 ; Laws 5th Legis. p. 72, Sec. 85.) "The rule," (said Sutherland, J., in The People v. Vermilyea, 7 Cow. 390,) "is substantially the same " in civil and criminal cases ; though in the latter, the author- " ities all agree that the matter is to be scanned more closely, " on account of the superior temptation to delay and escape " the sentence of the law." "In cases where the common affi- " davit applies, the Court has no discretion. The postpone- " ment is a matter of right, resting on what has become a prin- " ciple of the common law. But where there has been laches, " or there is reason to suspect that the object is delay, the " Judge at the Circuit may then take into consideration all " the cirtumstances ; and grant or delay the application at his " pleasure. Where the subject takes this turn, the application " ceases to be a matter of right ; and rests in discretion."— This doctrine seems to be borne out by the authorities. (2 Cow. and Hill Notes to Phil. Ev. Note, 353.) What was said by the learned Judge, of the common affidavit applies to the affidavit prescribed by the statute. Where the want of proper diligence cannot be imputed, and there is no cause to suspect that the application is for delay, if the affidavit conforms to the statute, the continuance is a matter of right ; and its re- fusal will be error. But it is otherwise, where it appears that the affidavit is not true in fact, or there is reason to believe that the object of the application is delay. (See late cases at Tyler and at this Term.) It is the well settled rule of practice of the common law, that counter affidavits will be received, to destroy the force of the common affidavit. In the leading case of Rex v. D'Eon, (3 Burr. 1513, 1 W. Bl. 510 S. C.,) the issue was on an information for a libel ; and in reply to the common affidavit of the absence of witnesses in France, the prosecutor

showed by counter affidavits, that the libel was printed in the Spring of 1764, several months before which the witnesses named had departed to France, where they resided. The Court held that there could be no use in putting off the trial ; that on the whole, comparing the libel and affidavits, the witnesses could not be material. The defendant had made no effort to procure their attendance ; and there was no reasonable expectation that they could be obtained thereafter. The Court considered either cause sufficient against the rule to postpone the trial. These causes, neglect and improbability of obtaining the attendance of the witnesses, have been recognized as the subject of counter affidavits in subsequent cases. But affidavits to contradict the general oath of materiality, seem not to have been often received. (2 Cow. and H. Notes, p. 685, and cases cited.) There is no doubt that since D'Eon's case, it has been the settled common law practice, to receive counter affidavits to show want of diligence, and improbability of any reasonable expectation that the proposed testimony can be obtained at all, or at the time to which it is proposed to postpone the trial. Such too is the practice in some, probably most, of the Courts of this country. (Smith's case, 3 Wheeler Cr. Cases, 172, 176 ; The People v. Brigham, 1 Cit. H. Rec. 30 ; The Territory v. Nugent, 1 Martin (La.) R. 108 ; 3 Day, 308.)— In criminal cases, especially, we look to the common law for the rule of practice, in the absence of statutes. Our departure from the common law system of pleadings, and blending of cases of legal and equitable cognizance, has caused a corresponding departure from the common law practice in civil cases. Not so in criminal. In the administration of the criminal law, the common law, where not modified by the constitution or statutes, has been held to furnish the rule of decision, as well in matters of practice, as principle. There we find ample authority for the practice of receiving counter affidavits in cases like the present. There was, therefore, no error in receiving the counter affidavit. The weight to be attached to

it, or its credibility, was for the decision of the Judge below. Unless there were reason to believe that he had attached an undue weight to it, his having entertained it cannot be deemed erroneous.

The question then is, whether, upon the affidavits, the defendant was entitled to a continuance. We cannot say that he was. In the case of Rex v. D'Eon, before cited, the principles upon which the Courts are to act in postponing the trial of a cause, on account of the absence of witnesses, are clearly laid down, and have since been received as the settled law in the English and American Courts. To entitle the party to a postponement of the trial three things are necessary : " 1st. " To satisfy the Court that the persons are material witnesses. " 2nd. To show that the party applying has been gulty of no " laches nor neglect. 3rd. To satisfy the Court that there is " reasonable expectation of his being able to procure their at- " tendance at the future time to which he prays the trial to be " put off." (3 Burr. 1514, 1515.) This was a second application for a continuance, for the same cause as the first. Instead of being more explicit, and showing what were the facts of the case, and what means of information his witnesses possessed, as might have been expected, if the defendant really believed the witnesses were material to his defence, and that their testimony would be favorable to him, and as has been generally held to be necessary after the trial has been postponed at the instance of the defendant once or oftener, (8 East 31, 34 ; 6 Cow. 577,) the affidavit is less full and circumstantial than the first ; stating only, in general terms, " that he did not kill the said Butler ; but that it was his brother Benjamin Hyde, who killed him." It must be admitted that this is not a very satisfactory statement of the particular facts proposed to be proved by the witnesses. It is silent as to their means of information, and the occasion and circumstances of the homicide ; and certainly does not contain what the statute seems to contemplate ; or what has generally been required in

such cases. (1 W. Bl. 436 ; 7 Cow. 385 ; 2 Litt. 230.) When the subject of the proof and the relations of the parties are considered, it cannot be denied that there was reason to suspect that the object was delay. Where that is the case, all the authorities hold, that the application ceases to be a matter of right, but the Judge is to take into consideration all the circumstances, and grant or deny the application as the truth and justice of the case may seem to require. (Rex v. D'Eon, 3 Burr. 1514.) Many cases might be cited where a postponement has been held rightly refused on this ground, where the affidavit was quite as full, and more full and satisfactory than the present. (Moore's case, 9 Leigh, 643, 644; Bledsoe v. The Commonwealth, 6 Rand. 673 ; Bellew v. The State, 5 Humph. 567 ; Knight v. The State, Id. 599 ; Wharton's Am. Cr. L., MOTION FOR CONTINUANCE.) Where there is cause to suspect that the object is delay, it is then proper to receive counter affidavits ; and looking to the counter affidavit in this case, we think the Court was well warranted in not giving credit to the affidavit of the defendant. As respects the witnesses who were beyond the limits of the State, the observations of Brevard, J., in The State v. Fyles, (3 Brev. 304,) may be quoted as applicable to this case. "My opinion, (he said) " is, that this motion ought to be rejected. On the argument, " the only ground insisted on, was the refusal of the Court of " general sessions, for Newberry District, to postpone the trial, " on affidavits which stated the absence of material witnesses " for the prisoner, who were beyond the limits of this State. " If trials for capital offences should be postponed on affidavits " of this sort, very few cases would ever be tried at all, and " none at the first Court after the arrest of the offender, unless " he should be willing. Affidavits of this kind ought very " sparingly to be admitted. For, in Circuit trials, the prison- " ers, from the time of their commitment may, and ought, to be " preparing for their defence. The place where they ought to " be tried is, in most cases, well known, and they have like-

" wise a reasonable certainty of the time long before the Cir-
" cuit commences. If the prisoner has had no time or oppor-
" tunity to prepare for his defence, this will be a good ground
" for a postponement. It must be admitted that no crime is
" so great, no proceeding so instantaneous, but that upon suffi-
" cient grounds, the trial may be put off; but three things are
" necessary : 1. That the witness is really material, and ap-
" pears to the Court so to be. 2. That the party who appears
" has been guilty of no neglect. 3. That the witness can be
" had at the time to which the trial is deferred. (The King
" v. D'Eon, 1 W. Bl. R.) The witnesses are said to be in Ten-
" nessee. No compulsory process can issue to obtain their
" testimony. The presumption is, that they would not attend
" at another Court, or they would have attended at the trial,
" where the life of the defendant is in jeopardy." Similar rea-
sons would apply to prevent a postponement on account of the
witness said to reside in the State, but who could not be
found. The only witness, on account of whose absence there
may be cause to doubt whether the defendant was entitled to
a continuance, was Milly Hyde, who had been served with a
subpoena. She, it seems, was the widow of the defendant's
brother, by whom he expects to prove that her deceased hus-
band was the guilty party. To say nothing of the reasonable-
ness of such an expectation, considering the counter affidavit,
it is impossible to say, that the Court ought to have been sat-
isfied, either that the witness was really material to the de-
fendant; or that he could derive any benefit from her testi-
mony at any future time, to which the trial might be post-
poned.

But it is insisted that the Court erred in receiving the ad-
missions of the State's Attorney, that the witness, Milly Hyde,
would testify as stated by the defendant. If the application
for a continuance were otherwise sufficient, and it satisfactori-
ly appeared that the defendant was entitled to a postponement
of the trial to obtain her testimony, I should be of opinion,

that the admission as to what she would testify, would not be a sufficient ground for refusing the motion. Upon this point, as to whether any and what admissions will be received as an answer to the motion, there have been various and conflicting decisions. (The People v. Vermilyea, 7 Cow. 369 ; Whart. Am. Cr. L. 835 ; 1 Meigs, 195.) I do not think such admissions ought to be received as a full and fair substitute for the oral testimony of the witness. Nor does it appear that the Court so regarded the admissions in this case. The continuance does not appear to have been refused on that ground.— On the contrary, it was placed by the Judge on a quite different ground ; that is, that he was not "satisfied that the facts alleged by the defendant were true." In the case of The People v. Vermilyea, the majority of the Court, holding that the admissions were improperly received as an answer to the motion, went on the ground that the application was otherwise sufficient, and was so pronounced by the Judge ; and that a continuance must and would have been granted but for the admissions. (7 Cow. 398–9, Woodward, J.) So in the case of Goodman v. The State, (1 Meigs, 195.) The Court in that case declared themselves of opinion that " the affidavit did contain sufficient grounds for the continuance of the cause."— They said moreover, if the Circuit Court had refused to continue the cause upon the ground of the insufficiency of the affidavit, they would have hesitated long before they would, for that reason, have reversed the judgment ; notwithstanding their opinion of the sufficiency of the affidavit. "But, (they " say,) the record manifests that the Circuit Court thought as " we do, that the affidavit was sufficient, and refused to con- " tinue the cause, because the Attorney General offered to ad- " mit, not that the facts stated in the affidavit were true, but " that the witnesses there mentioned, would, if present, testify " as stated by the defendant." This, they held, was not equivalent to the testimony of the witnesses, and therefore not a sufficient answer to the motion.

The case here was very different. The Court deemed the

application insufficient ; and on that ground, we think, rightly refused the motion. The Judge mentions more grounds than one, which would have been sufficient to warrant the refusal of the motion ; as the want of diligence, or any reasonable ground to expect the attendance of the witnesses at another Term of the Court. But as it is evident the main ground on which the Court acted was the want of verity in the affidavit, and the belief that the application was for delay ; and as we think this ground well founded and sufficient, it is unnecessary to examine the question of diligence.

It is evident the continuance must have been refused, for the other causes stated by the Judge. They, at least, were sufficient to warrant its refusal ; and the fact of receiving and considering the admissions can have done the accused no injury, and can be no reason for reversing the judgment.

We conclude, upon that single question, and not looking beyond the application, that the Court did not err in refusing a continuance. But in considering the case upon appeal, where the motion for a new trial brings before us a statement of the evidence upon the trial, we do not feel bound to shut our eyes wholly to the facts of the case, in considering whether the judgment ought to be reversed for the refusal of the Court to grant a continuance. If, upon the trial, there had appeared to be cause to apprehend that a continuance was improperly refused, a new trial must have been granted. But if, on the contrary, it very satisfactorily appears that the application for a continuance could not have been well founded in fact, it must afford an additional reason for refusing a new trial, or to reverse the judgment on that ground. We may suppose a case where a sufficient application for a continuance, on account of the absence of a material witness, has been improperly overruled. Yet, if it should turn out, that during the progress of the trial the witness made his appearance, and the defendant obtained the benefit of his testimony, it cannot be supposed that the Court, upon the motion for a new trial,

would not be at liberty to look beyond the affidavit; or that this Court, upon appeal, must shut our eyes to the fact that the defendant has had the benefit of the testimony of his witness, and can have sustained no injury by the refusal of his motion for a continuance. Surely, in such a case, this Court would not be required to reverse the judgment on that ground.— Though we have considered the application for a continuance on its own merits, in the abstract, in order to be certain that no injustice had been done the defendant in refusing his motion, we have thought proper to look into the evidence embodied in the record; and we there find additional cause to be satisfied, that the motion was not improperly refused. We forbear comment upon the evidence. It may suffice to say, that several witnesses, who were eye witness of the homicide, had ample means and opportunity of seeing and observing all that passed, and could not be mistaken as to the author of it, testified positively to the fact, with such circumstantial particularity, and just such diversity as to immaterial matters, which were not likely to make a strong, permanent impression, as to show that there was no collusion; and such perfect unanimity as to the material facts, which were calculated to make a strong, abiding impression upon the memory, as to show that they were not and could not be mistaken. It thus appears that there were other witnesses, than those named in the affidavit, by whom all the facts and circumstances attending the fatal scene could be abundantly proved, that the witnesses whose testimony was sought, could not, if present, have testified to the truth of the fact proposed to be proved by them; and that the affidavit for a continuance, therefore, was not entitled to credit.

We have thus looked into the evidence upon the motion for a new trial, which necessarily brings it under review; and we advert to it, not as a ground for affirming the judgment of the Court refusing a continuance; but as placing it beyond doubt, that no injustice can have been done the defendant by

refusing his motion : which was rightly refused, on the ground of its want of legal sufficiency.

The only remaining ground on which a reversal is asked, is the ruling of the Court in excusing persons from serving as jurors, whose conscientious scruples in relation to capital punishment, were held a sufficient cause for standing them aside on the motion of the District Attorney. This question was sufficiently examined in the case of White v. The State, at the present Term, where it was held that excluding such persons from the jury was not error.

We are of opinion that there was no error in the judgment, and that it be affirmed.

Judgment affirmed.