# SUPREME COURT OF TEXAS.

## TERM OF 1873.

---

WM. PLATZER v. W. B. NORRIS & Co.

1. The words, "A. B., please pay the above bill," written and signed upon an itemized account, do not constitute a negotiable instrument.
2. If the drawee in a bill of exchange be insolvent at its date, the drawer is liable without diligence.
3. Suit to the first term is a substitute for presentation, protest and notice; and where the latter is excused, it is not necessary to bring suit to fix the liability of the drawer.

APPEAL from Galveston. Tried below before the Hon. A. P. McCormick.

On April 27, 1869, W. B. Norris & Co., appellees, brought suit against the appellant, upon an account, as follows:

"GALVESTON, TEXAS, Sept. —, 1869.
"Mr. WILLIAM PLATZER,
"To NORRIS & Co., Dr.

| | |
|---|---:|
| 2 m shingles, @ $6.00 | $12 00 |
| 3000 feet ast. lumber, @ $25 | 75 00 |
| 500 feet w. boards, @ $25 | 12 50 |
| Drayage | 5 00 |
| | $104 50 |

"Messrs. Hoffman, Musick & Co., please pay above bill.

(Signed) "W. PLATZER."

It was alleged that upon the sale and delivery of said property, the defendant undertook and promised to pay petitioner the said sum of $104.50 "immediately, and thereupon executed his draft or order upon Messrs. Hoffman, Musick & Co., of said city of Galveston, all of which will appear at the bottom of said bill," as stated above.

By amendment filed March 22, 1872, plaintiff alleged that the order had been presented for payment to said Hoffman, Musick & Co. and they failed to pay the same, of which the defendant had notice,   *    *    and that at the time said order was made said Hoffman, Musick & Co. were notoriously insolvent, and have been since and are now notoriously insolvent;   *    *    that defendant had no funds in the hands of Hoffman, Musick & Co. on which to draw.

The answer of the appellant consisted of a general demurrer, general denial, and pleas in confession and avoidance, especially alleging that the appellees, by reason of their laches and negligence in the premises, had forfeited all right of action and recovery against and from the appellant.

On the trial the plaintiff, after introducing the account and order as above set out, proved by J. Z. Scott as follows: "Hoffman, Musick & Co. were notoriously insolvent on the eighth of November, 1869, on which day they were closed up by the sheriff.   *    *    On the 9th they made an assignment for the benefit of creditors. I am the assignee in bankruptcy of their estate, and know from an examination of their papers and books that they were insolvent many months before November 8, 1869. I had not heard of their insolvency at that date. They were forced into bankruptcy in the month of December, 1869. There has been a dividend declared of ten per cent., and the estate will probably pay twenty per cent."

The judgment was for plaintiff, and the defendant has appealed.

*Gresham & Mann*, for appellant.—The errors upon which the appellant founds his appeal are :

1. The court erred in not rendering judgment for the appellant, because the bill of exchange was never presented for payment.

2. The court erred in not rendering judgment for the appellant, because, even if the bill of exchange had have been presented for payment, no notice of its dishonor was ever given to appellant until the institution of this suit, eighteen months after it was given to appellees.

3. The court erred in not rendering judgment for the appellant, because the negligence and laches on the part of the appellees having absolved and relieved him of all liability on the bill of exchange, which was given for the lumber bill, he was, therefore, not liable, under appellees' count in assumpsit, for lumber bought and sold.

*First.* Before discussing the points made by appellant, we will examine the instrument in writing sued upon and determine its character. Is it a bill of exchange? It is ; and we think there can be not the slightest doubt on this point; it was so treated by the court below and by counsel who appeared for appellees. It is an order upon designated drawees to pay absolutely upon demand (the time of payment not being expressed, the law fixes it upon demand), to designated payees, a positive sum of money; is dated at a certain place, and signed by the drawer. That this description constitutes a bill of exchange is, we think, fundamental. (Chitty on Bills, Chapter 5; Story on Bills of Exchange, Chapter 3; Byles on Bills, Chapter 6 ; Edwards on Bills and Promissory Notes, Chapter 3.)

Presentation or demand for payment. Was it neces-

sary? Yes; we think there is as little doubt upon this point as upon the question of the character of the instrument sued upon. This case, as disclosed by the record, shows that the appellees kept this bill of exchange in their possession eighteen months without making the slightest effort to collect the sum of money it called for; absolutely nothing was done by them until they filed this suit. The record discloses the fact that the appellees had thirty-eight days at least, and probably more, before the failure of Hoffman, Musick & Co., during which the law presumed, in the absence of proof to the contrary, that the bill, if presented, would have been paid. That presentation was necessary and incumbent upon the appellees, the following authorities conclusively show: "The legal effect of drawing a bill of exchange payable to a third person is a conditional contract by the drawer to pay the payee, his order, or the bearer, as the case may be, if the acceptor or drawee, as the case may be, does not." (Byles on Bills, p. 62.) "His contract, under the law merchant, is that if the drawee shall not accept the bill when presented, or shall not pay it when it becomes payable, and the holder shall give him due notice thereof, then he will pay the amount." (Yale v. Ward, 30 Texas, p. 23; Story on Bills, § 107.) "The legal promise of the maker of the drafts was that the drawees would pay the same agreeably to the contents thereof; or in case of their failure so to do, that upon being informed in proper time of the fact, he would pay it." (Fromme v. Kaylor, 30 Texas, p. 757; also, Chambers v. Hill, 26 Texas, p. 473; Nichols v. Blackmore, 27 Texas, p. 587.) "If he did not choose to exercise his right of presenting the bill for acceptance, he was bound to present it for payment when due." (Carson v. Russel, 26 Texas, p. 455.) "To fix the liability of the drawer, it is necessary, on the part of the plaintiff, to prove presentation for payment, refusal to pay, and no-

tice to the drawer; and this legal diligence can only be dispensed with by proof (on the part of the plaintiff, of course) that the drawer had no funds or effects in the hands of the drawees at the time the draft was payable." (Cole v. Wintercost, 12 Texas, p. 120.) "Whether it be a commercial instrument or not, the undertaking of the parties is that the payee will make some attempt at collection." (Pridgen v. Cox, 9 Texas, p. 368.) "There was in this case no acceptance, and no necessity for presentation for acceptance, the bill being in legal contemplation payable on demand. Presentment for payment alone was necessary." (Campbell v. Wilson, 6 Texas, p. 396.)

This last is just our case. The above authorities are certainly sufficient to establish our position as to the necessity of a presentation. This being established, the next question that arises is, when should a presentation have been made? The payees and drawees to this bill lived in the same city. The law requires a presentation within a "reasonable time." What was a reasonable time in this case—both parties living in the same city? The authorities all say twenty-four hours after the delivery of the bill, unless there are usages of trade or other circumstances to justify a longer delay. No such usages or circumstances were proven or appear in this case. To sustain this position it is sufficient to cite the following authorities: Chitty on Bills, p. 380; Byles on Bills, p. 259; Chambers v. Hill, 26 Texas, p. 473.

The next question that occurs is, were the appellees in this case exempt from the necessity of exercising "legal diligence?" It may be claimed by appellees' counsel that the failure of Hoffman, Musick & Co., on the eighth of November, 1869, thirty-eight days after they received the bill, would exempt them from the necessity of presenting

it for payment, that it would have been a useless formality.

We have shown that "legal diligence" in this matter required them to present it for payment within twenty-four hours after its delivery, which would be, by a liberal calculation, on the second day of October, 1869. Did they know on that day, or any time up to the eighth of November, that the drawees were insolvent? Mr. Scott testifies that after he became the assignee of the drawees he then saw from an examination of their books that they had been insolvent many months before the eighth of November, but the public did not know this. The appellees had no reason to doubt the solvency of the drawees. Mr. Scott, from whom the only testimony on this point was obtained, says he had never heard of their failing condition until the eighth of November, nor had he ever heard anything to that effect—not even a rumor. The deed of trust was not of record. Then how can the appellees claim this as an excuse for not exercising "legal diligence?"

Even the failure or insolvency of the drawee, when known (except probably in the case of a bank), will not exempt the payee from the necessity of a presentation. (Byles on Bills, 252, and cases cited in note *c.*) We have shown in the case of Cole v. Wintercost, 12 Texas, p. 120, that this "legal diligence," to-wit, "presentation" and "due notice to the drawer," can only be dispensed with by proof (on the part of the plaintiff, of course), that the drawer had no funds or effects in the hands of the drawee at the time the bill was payable. We will quote still further from the same case, page 123: "Now it is the law that when the holder of the bill undertakes to excuse himself from the rule requiring strict notice of non-acceptance and non-payment, on the ground that the bill was drawn without funds, the burden of proof is upon him,

and he assumes the laboring oar to bring himself within the exception. And it is a presumption of law that the drawer had funds in the hands of the drawee when the bill was drawn."

The appellees have made no such proof, and of course are not exempt, for this reason, from the legal consequences resulting from their failure to exercise "legal diligence" in the premises. What are those consequences? The relief and discharge of the appellant from all liability on account of the bill of exchange sued upon. The law in this matter wisely reasons, that because of the laches and negligence of the appellees in the premises the appellant has been damaged—has been caused to lose—the sum of money called for by the bill of exchange executed and delivered to them.

*Second.* Even had a demand or presentation for payment been made and proven, due notice of the dishonor of the bill should have been given to appellant, in order to fix his liability. The necessity of giving notice of the dishonor of a bill we have sufficiently and clearly shown in the discussion of the first point made by appellant, and we need only refer to the authorities there cited. Notice is a part of the "legal diligence" imposed by the law in such matters as this under discussion. The necessity of due notice being established, the question occurs, how and when shall it be given, and what constitutes "due notice?" Under our statute the liability of the drawer of a bill of exchange is fixed by giving notice in two ways, first, by suing the acceptor at the first term of the court, etc. (Paschal's Digest, Art. 229.) This method cannot apply to the case at bar, since there is no acceptor to be sued, the bill being payable upon demand. The other method is by protest and notice (Paschal's Digest, Art. 232), and there can be no doubt but that the appellant should have had notice by

this method.    At what time should it have been given?
We have shown above, that when both payee and drawee
live in the same city, demand for payment should be
made within twenty-four hours.    The law requires notice
of dishonor to be made within the same time, to-wit,
twenty-four hours after dishonor.    (Byles on Bills, pp.
327 and 328, and cases cited in note 1.)

We have now conclusively shown what constitutes
"legal diligence" in the matter of "demand" and "no-
tice."    The record discloses the fact that this suit was
instituted eighteen months after the delivery of the bill
of exchange.    The appellees prove neither "demand" nor
"notice."    What then must be the inevitable and legal
conclusion in the premises?    It can be nothing else than
that the appellant is and must be discharged and relieved
of all liability on account of this bill of exchange, he
having been damaged and forced to lose (as the law, after
ages of experience, wisely presumes) the sum of money
called for by it.

This loss the law presumes (*vide* last quotation from
Cole v. Wintercost, 12 Texas, 123 ; numerous other au-
thorities could be cited, but it is not necessary, so element-
ary is the principle), but we are not compelled to rest
alone upon this legal presumption (although it is amply
sufficient to give us the case), for it is in proof that more
than ten per cent., probably as much as twenty per cent.,
could have been secured at, any time up to the trial of
this cause, and afterwards, but for the negligence of the
appellees.    The appellant could not secure it; he had
transferred his right to the appellees.    The facts in this
case amply vindicate the wisdom of the law in presuming
damages under such circumstances—a presumption that
lies at the very foundation of all commercial transactions,
and which, more than any other principle of the law
merchant, begets and engenders and keeps alive that vigi-

lance and promptness so important and so vitally essential to commercial success.

*Third.* The appellant having been relieved of all liability on the bill of exchange because of the course of conduct pursued by the appellees, can it be possible that they have the right to recover the same money under their count in assumpsit for lumber bought and sold, which transaction was the foundation of the bill and in payment of which the bill was given, and which gave rise to and was the cause of its execution and delivery to the appellees? Why did the law exempt the appellant from paying the bill of exchange? Because it presumed that he had been damaged that much—that he had lost that much. Now, will the law compel the appellant to pay the same amount, the same debt (changed only in name), to the appellees when they ask it upon an open account, thereby causing the appellant to suffer a loss of double the original debt, to-wit, loss sustained on bill of exchange by negligence, and amount paid on open account? The law will do no such thing. It would be a mockery of justice; it would be a contradiction. The law would be made to say, "you are relieved of all liability in this matter, and you are not relieved." It would be announcing in one breath the appellant's discharge, and in the next directing, upon the same subject matter, his re-arrest. The cases cited by the appellees to sustain their view of 'the case in this particular all show that the plaintiff had never by his laches (as in this case) lost his right to recover upon the draft or bill, and therefore they have no pertinency or applicability to the case at bar. Counsel for appellant respectfully submit that this case should be reversed and dismissed.

*Spencer & Stewart,* for appellees, cited 6 Texas, 163, McNeill v. McCamley; 6 Harris & Johnson, Maryland

Reports, 168, Insurance Company v. Smith ; 3 Cranch, 311, Harris v. Johnson ; 1 Cranch, 72, Clark v. Young ; 11 Texas, 455, Sydnor v. Gascoigne ; 16 Texas, 128, Insall v. Robson ; 2 Story's C. C. Reports, 511 ; 2 Blackstone's Commentaries, 469 ; 3 Johnson's Cases, 259, Conrey v. Watson.

OGDEN, J.—This suit was brought in the District Court by the appellees against the appellant, upon an account for a bill of lumber, and an order given by appellant upon the house of Hoffman, Musick & Co., to pay the amount of the bill. The account is rendered in September, 1869, and the order entered at the bottom of the account is without date, as follows : "Messrs. Hoffman, Musick & Co., please pay above bill." Hoffman, Musick & Co., not paying the bill, and having become bankrupts, this suit was instituted against the original debtor and the maker of the order. Judgment having been rendered against him, he has appealed.

The only question raised in the assignment of errors, which need be noticed here, is in regard to the non-presentation of the order to Hoffman, Musick & Co. for payment, and the want of protest for non-payment and notice to the drawer. Our statute provides two modes for fixing the liability of the drawer and indorser of commercial or negotiable paper. The first is by protest, and the other is by bringing suit at the first term of the court, or at the second term, and by showing good cause for not bringing suit at the first term. And the holder has, in all cases, the choice of pursuing either or even both remedies. But the instrument here sued on is neither commercial paper, properly speaking—for it is without date and without a payee—nor is it a negotiable instrument. Hoffman, Musick & Co., were not bound to pay, and could not have been sued on the order, and certainly neither Platzer nor

any one else could have been held liable on the order if detached from the account. That order, therefore, can be regarded as but little more than an acknowledgment of the justness of the account; and we think it may be considered quite doubtful whether a protest or suit at the first term of the court was necessary in order to fix appellant's liability. But if we regard the instrument in the most favorable light for appellant, and consider it as a bill of exchange, then the holder would certainly have the right to bring suit, under the statute, instead of protesting it for non-payment (Art. 229, Pasch. Dig.); but he could not have sued Hoffman, Musick & Co., for they were not requested to accept, but to pay on demand, and they did neither. But it is also clearly established, that within about one month from the making of the order, Hoffman, Musick & Co. were notoriously insolvent, and were bankrupts; and if they had accepted the order on the day of the execution, yet the holder need not have sued them after their bankruptcy, in order to fix the liability of the maker. (Insall v. Robson, 16 Texas, 128.) His liability was fixed by the insolvency of the drawee, and he cannot now complain that he was not sued as soon as he might have been.

The diligence by bringing suit, as prescribed by the statute, in order to fix the liability of the maker, is a substitute for demand, protest and notice, as required by the law merchant. (Sydnor v. Gascoigne, 16 Texas, 456.) If, therefore, suit was brought against the maker at the first term, or if the drawer became notoriously insolvent before the first term, after the maturity of the draft, in either case the liability of the maker became absolutely fixed, and he has no right to complain of the laches of plaintiffs in prosecuting this claim against himself. Appellant claims that he has been damaged by the laches of appellees in prosecuting their claim; but he has failed to

prove any damages, and under the circumstances we think it would be difficult to presume he has sustained any. There is no error in the judgment, and it is affirmed.

AFFIRMED.