BURRILL AND SMITH JACKSON *v.* THE STATE.

1. CONTINUANCE. — Applications for continuance which are not based on the statute, or which do not conform to its requirements, are to be controlled by the judicial discretion of the court to which they are addressed; and the exercise of that discretion will not be revised on appeal unless an abuse of the discretion be apparent.

2. SAME — CASE STATED. — Indicted in April for murder, the accused was arraigned for trial in the succeeding October, when he applied for a first continuance, alleging the absence of a female witness by whom he expected to prove an *alibi*, but for whom he had obtained no legal process, inasmuch as she had been confined in child-birth during the preceding week, and was still unable to obey process. *Held*, that this application fails to show diligence, or that the witness was the only one to the *alibi*, or that her attendance at the next term would be procured, and therefore was not a statutory showing, but one determinable by the judicial discretion of the court below; and that the refusal of the continuance appears to have been a proper exercise of that discretion.

3. SPECIAL VENIRE — JURY. — Certain of the persons named in the copy of the *venire* served on the accused had not been served by the sheriff, and others were not in attendance when the *venire* was called. The accused declined the proposal of the court to suspend the call and run attachments for such persons, and the panel was filled out of the *venire*, and, so far as the record shows, without the accused exhausting their challenges. *Held*, that, under the circumstances, the irregularities must be considered as waived; and

JACKSON v. THE STATE. 293

Statement of the case.

there being nothing to impugn the qualifications or impartiality of the jury, no error to the prejudice of the accused is apparent.

4. ACCOMPLICE TESTIMONY — CHARGE OF THE COURT. — In the trial of two out of eight persons jointly indicted for murder, the State used an accomplice as a witness, and the court instructed the jury that his testimony implicating those not on trial need not be corroborated, and, having otherwise charged the law controlling accomplice testimony, instructed the jury that contradiction or want of corroboration of the witness in immaterial matters was of no consequence. *Held,* in connection with the rest of the charge, and with the evidence adduced, not to be a charge on the weight of evidence, or otherwise erroneous.

5. EVIDENCE. — See the opinion for a recapitulation of an accomplice's testimony in a trial for murder, and also of corroborating evidence held sufficient to sustain the conviction on appeal.

APPEAL from the District Court of Bastrop. Tried below before the Hon. L. W. MOORE.

A very full disclosure of the material evidence in this case will be found in the opinion of this court, which, in its recital, follows the language of the statement of facts.

All the parties implicated in the murder were freedmen, as also was John Black, the deceased; and the record shows the terrible issue which imposture and superstition can engender out of ignorance.

The jury found the appellants guilty of murder in the first degree, and judgment of death followed, in conformity with the law.

The six other parties jointly indicted with the appellants were Henry Owens, Thomas Robinson, William Peterson, Prior Jones, Steve Robinson, and one Sam, whose name was otherwise unknown to the grand jury, but who, doubtless, is the character whom the witnesses call Sam Squirrelhunter, the fortune-teller.

*G. W. Jones, D. B. Orgain, D. Moore,* and *John B. Rector,* for the appellants.

*George McCormick,* Assistant Attorney-General, for the State.

WINKLER, J.   The appellants, together with six others, were indicted in the District Court of Bastrop County for the murder of one John Black, alleged to have been committed on December 23, 1876.   These appellants were jointly tried, separately from the others, at the October term, 1877, of the court, were convicted of murder in the first degree, and have taken this appeal.

On the eve of the trial the appellant Burrill Jackson moved the court to grant him a continuance, and made an affidavit in support thereof, in which he stated " that he cannot safely go to trial at this term of court, on account of the absence of Betty Jackson, a material witness for his defense. Defendant says he expects to prove by said witness that he was not present on the day and at the place when and where the murder of John Black is said to have taken place, but that, at the time and on the day said John Black was murdered, defendant was at home with said Betsy Jackson, and was not present then, or at any other time, when John Black was murdered.   Defendant says he has caused no process to issue for said witness, because it would have been impossible for her to have come to court, she, the said witness, having, on last Friday, been delivered of a child, and is still in child-bed, unable to answer to any process of this cause."

It was further stated in the affidavit that the witness resided in Bastrop County, and was not absent by his procurement or with his consent, and that a continuance was not asked for delay.   The motion was also supported by the affidavit of one Hubbard, as to the residence and physical condition of the witness, in which it is stated she lived on affiant's place, six miles from the town of Bastrop, and fixing the date of her confinement as October 19, 1877.   The indictment was filed April 25, 1877; the application for a continuance was sworn to and filed October 23, 1877.   The record is silent as to when the accused was arrested.

On a hearing of the motion it was overruled by the court,

and a continuance was refused.   To this ruling of the court
the defendant excepted, and in certifying to the bill of excep-
tions the presiding judge appends the following explanation :

"The court believed, from the length of time since the
arrest of defendant without any process to said witness, that
said application was not made in good faith, but for delay."

The refusal of the court to continue the case is the basis
of the first error assigned, and also the first ground in the
motion for a new trial.

Testing this application by the rule laid down in the Code
of Criminal Procedure, article 518, governing a first appli-
cation for a continuance of a criminal case by the defendant,
for the want of an absent witness (Pasc. Dig., art. 2987), it
must be held insufficient as a statutory application, in that
there is shown to have been no diligence employed to pro-
cure the attendance of the witness, which is required by the
statute.     *Wall* v. *The State*, 18 Texas, 693 ; *Baker* v. *Kel-
logg*, 16 Texas, 117 ; *Murry* v. *The State*, 1 Texas Ct. App.
174 ; *Grant* v. *The State*, 2 Texas Ct. App. 163.

Applications for continuances not based upon the statute,
and which do not meet its requirements, are addressed to
the discretion of the court to whom they are made, and should
be granted or refused according to the circumstances,
and will not be revised on appeal except in a clear case of
abuse of that discretion.  *Baldessore* v. *Stephanes*, 27 Texas,
455 ; *Nelson* v. *The State*, 1 Texas Ct. App. 41.

This discretion, however, is not an irresponsible one, but
must be exercised within the bounds of settled rules of
practice.   Mr. Wharton says "the general rule is that a
continuance will be granted on an affidavit setting forth
the absence of a material witness, and alleging that his
attendance will be procured at the next court, and that
due diligence has been used in attempting to procure his
attendance."   Whart. Cr. Law, sec. 2930.   But "a con-
tinuance will not be granted on such an affidavit when the

prisoner has been guilty of laches or delay, or of any connivance." *Ibid.*, sec. 2932 *b*. One of the requisites of the foregoing is that the absent witness will be produced *at the next court*.

In *Hyde* v. *The State*, 16 Texas, 445, we find authority on the proposition we are considering. Mr. Justice Wheeler, in delivering the opinion, makes the following apt quotation from the opinion of Sutherland, J., in *The People* v. *Vermillyea*, 7 Cow. 390 : "The rule is substantially the same in civil and criminal cases, though in the latter the authorities all agree that the matter is to be scanned more closely, on account of the superior temptation to delay and escape the sentence of the law. In cases where the common affidavit applies, the court has no discretion ; the postponement is a matter of right, resting on what has become a principle of the common law. But when there has been laches, or there is reason to suspect that the object is delay, the judge at the circuit may take into consideration all the circumstances, and grant or deny the application at his pleasure. When the subject takes this turn, the application ceases to be matter of right, and rests in discretion."

From this opinion we make this further extract : "In the case of *Rex* v. *D'Eon*, 3 Burr. 1513 (*s. c.*, 1 W. Bla. 510), the principles upon which courts are to act in postponing the trial of a cause on account of the absence of witnesses are clearly laid down, and have since been received as the settled law in English and American courts. To entitle a party to a postponement of the trial, three things are necessary : first, to satisfy the court that the persons are material witnesses ; second, to show that the party applying has been guilty of no laches or neglect ; third, to satisfy the court that there is reasonable expectation of his being able to procure their attendance at the future time to which he prays the trial to be put off."

The question here, then, is, Did the court below err in overruling the application of one of the defendants for a continuance on the grounds set out as above? From the facts that the indictment was filed in April, and no legal effort made to secure the attendance of the witness until October; that the object of obtaining. the witness was to prove an *alibi*, a fact not shown to have been exclusively within the knowledge of the absent witness; the application not being in compliance with the statute, and not meeting the rules as above laid down, either in *Hyde* v. *The State* or by Mr. Wharton, nor showing that there was a reasonable expectation of procuring the attendance of the witness at the next term of the court, we are of opinion that there were sufficient grounds to justify the court in believing that the application was made for delay, and that it but exercised proper judicial discretion in overruling the application for a continuance of the case.

The second alleged error is set out as follows: "The court erred in proceeding with the call of the special *venire* over objections of defendants' counsel, as set forth in the bill of exceptions."

The bill of exceptions contains two causes of complaint: first, that at some stage of the proceeding, but at what stage is not shown by the record, it appeared that five persons whose names were on the copy of the *venire* served on the defendant, though upon the regular jury drawn by the jury commissioners, had not been served by the sheriff; second, that it subsequently appeared that, upon the *further call*, four other jurors who had been served were not in attendance. In each case, when the trouble was made known, the court proposed to suspend the call and order attachments for the absent jurors, which offer was declined by the defendants; and, with reference to the last objection, it is stated in the. bill of exceptions that "the call of the

*venire* was proceeded with without opposition, and the jury was made up without exhausting said *venire*."

In this proceeding we find no error of which the appellants can be heard to complain. When the copy of the special *venire* was served, if there was any objection to it, exception should have been taken to it in writing, so as to have the matter settled by the court before proceeding to impanel the jury, and in the manner pointed out by chapter 3 of the Code of Criminal Procedure. Pasc. Dig., art. 3031 *et seq*. The court was not expected to delay the trial on account of the absent jurors. Any supposed irregularity, such as is shown by the bill of exceptions, must be considered as having been waived by the acquiescence of the accused in the completion of the panel without objection.

The case of *Bates* v. *The State*, 19 Texas, 122, cited by counsel, is not analogous to the present case, and does not support the views contended for by the counsel. For aught that is shown from the record, the jury was selected without the accused having exhausted their peremptory challenges, and from the special *venire* served upon them ; and it is not made to appear that the jury was anything else than a fair and impartial one in all respects.

The third and fourth assignments of error relate to the charge of the court, and may, with propriety, be considered in connection. They are set out in the transcript as follows :

" 3. The court erred in its instructions to the jury.

"4. The court erred in refusing instructions asked by the defendants."

In determining the sufficiency of the charge, reference must be had to the evidence adduced on the trial, as it is by the testimony, under the pleadings, that the sufficiency of the charge must be tested. It is in this manner we ascertain what is the law applicable to the case upon the questions involved as they arose upon the trial. It may not

be amiss to state, in this connection, that a witness who acknowledges himself to have been a participant in the alleged murder, or, at any rate, present when it was perpetrated, was introduced and testified in behalf of the State, which rendered it necessary for the court to instruct the jury on the law as to the value of the testimony of an accomplice, and the necessity of corroboration to warrant a conviction.

That portion of the general charge on the subject is in the following language, which, for convenience, we have separated into paragraphs and numbered :

1. "A conviction cannot be had upon the testimony of an accomplice — that is, any one aiding or abetting, in any way, an offense — unless corroborated by other evidence tending to connect the defendant with the offense committed ; and the corroboration is not sufficient if it merely shows the commission of the offense.

2. "If the jury believe that there is corroborating testimony connecting the defendants who are on trial with the offense, then it is immaterial if there is not corroborating testimony as to other parties not on trial.

3. "It is alone the defendants on trial whom you are trying, and whose guilt or innocence you are examining into.

4. "The want of corroboration in the testimony not material, or contradiction where immaterial, is of no consequence in determining the guilt of the defendants."

And immediately following is this further instruction :

"If you have any reasonable doubt of the guilt of the defendants, or either of them, you will acquit such."

It is the fourth paragraph of the charge that is particularly objected to, and pointed out in the argument of counsel for appellants as being a charge upon the weight of the evidence, and calculated to mislead the jury in determining the question of the guilt or innocence of the accused.

After a careful consideration of this portion of the charge,

in connection with those portions which immediately pre-
cede, and which immediately succeed, the portion com-
plained of, we are of opinion that, presuming the jury
to have been composed of men of ordinary intelligence, it
was not liable to the objections urged against it by the
counsel.  If we bear in mind that the jury had just been
charged that they would not be authorized to convict upon
the uncorroborated testimony of an accomplice, and that,
in order to convict, they must believe that there is corrob-
orating testimony tending to connect the defendants then on
trial with the commission of the offense — all of which was
correct law, as has been repeatedly held, both by the
Supreme Court and this court — we fail to perceive how
the minds of the jury could have been diverted from the
main issue before them ; and no injury could have resulted
to the defendants by the jury being told that it was imma-
terial whether there was corroborating evidence as to other
parties not on trial, or instructed as in paragraph 4 of the
charge as set out above ; and, especially, as they were told,
in very pointed and expressive language, that " it was alone
the defendants on trial whom you are trying, and whose
guilt or innocence you are examining into." The charge
asked by defendants on the subject, whilst more full, is
not a more accurate enunciation of the law than that given
by the court.  The court evidently endeavored to confine
the jury to a consideration of the case of those on trial,
and none other, and to the vital proposition in the case.
The rule laid down by the court is substantially the rule
prescribed by the Code, as follows :

"A conviction cannot be had upon the testimony of an
accomplice, unless corroborated by other evidence tending
to connect the defendant with the offense committed ; and
the corroboration is not sufficient if it merely shows the
commission of the offense."    Code Cr. Proc., art. 653
( Pasc. Dig., art. 3118 ).

It was not sufficient for the corroboration to merely show that John Black had been murdered, but it must tend to connect the defendants with the murder. As to who are, in law, accomplices, in the sense requiring corroboration to convict, see *Davis* v. *The State*, 2 Texas Ct. App. 588, and authorities there cited, and *Jones* v. *The State*, 3 Texas Ct. App. 575.

After a careful consideration of the evidence as set out in the statement of facts, we are of opinion that there was no such error in the charge of the court as given, or in refusing the instructions asked by the defendants, as would warrant a reversal of the judgment.

There remains to be considered the question raised by the fifth and last assignment of error: Did the court err in overruling the defendants' motion for a new trial? The main ground in the motion, not already considered, is that the verdict is contrary to the law and the evidence.

As to the evidence, the proof is clear that the deceased was taken from his home in Bastrop County, at a dead hour of the night, and most brutally murdered, about the time charged in the indictment. The main question on the trial was to ascertain who were the guilty perpetrators of the deed, and whether these appellants were of the number.

The following extract is made from the statement of facts, and contains the entire testimony of the alleged accomplice:

" George Veal, witness for the State, says that he knows the deceased, John Black; knows Smith Jackson and Burrill Jackson, the defendants in this case; says they are in court, and parties defendant; that he [witness], Bill Peterson, Tom Robinson, Sam Squirrelhunter, Burrill Jackson, Smith Jackson, Hoodlin Henry [Henry Owens], Mose, Prior Jones, Richard Gradington, and Freeman Shelton, took John Black out and hung him, about one and a-half miles from John Black's residence, in Bastrop County,

state of Texas; hung him by the neck and left him dead. Smith Jackson, Burrill Jackson, Freeman Shelton, Sam Squirrelhunter, Bill Peterson, and Mose Thomas were appointed at a meeting for the purpose, and were the parties that went into the house of John Black, about twelve o'clock, dragged him out, tied his hands behind him, and carried him off.''

On cross-examination: '' Hung deceased because they thought he had killed Hoodlin Henry's child. Had three meetings at three different times before hanging; had a meeting on the night of the hanging, and two other meetings on two other nights. That witness, Prior Jones, Steve Robinson, Richard Gradington, and Tom Robinson met at first meeting; that at third meeting, no one present but those at Black's house. Smith Jackson and Burrill Jackson were not present at two first meetings. At time of hanging, at which meeting Sam Squirrelhunter, Bill Peterson, Mose Thomas, Smith Jackson, Burrill Jackson, and Freeman Shelton were appointed to go in the house and bring deceased out; and those six did go in the house and brought him out. Some light in the house; could see these parties in the house; so dark could not distinguish them from where I was; parties were disguised. If had not known who the parties were, could not have distinguished or recognized them, or known who they were. Hoodlin Henry [Henry Owens] was round at the back door, opposite to where parties went in house; Hoodlin Henry did not go in house. Prior Jones rode the mule that dragged the deceased. That if the deceased had told where the child was, they would not have hung him. That parties, in their meetings, had never agreed to hang deceased if he told where the child was; if he did not tell, to hang him. Tom Robinson was only one in favor of hanging him any way; that the agreement was to go and take John Black out and scare him. They thought, by threatening to hang him, he would tell

where the child was; that they believed he [Black] knew what had become of the child. That they had searched for the child, and could not find it; child been gone about six weeks, and was last seen with boys of deceased. The missing child was about six years old. That they sent for the man Squirrelhunter, that said he was a fortune-teller and could tell all about the missing child, and that Squirrelhunter came and met with them in their meetings, cut his cards and looked in some coffee-grounds, and told them that John Black knew all about the missing child, and knew what became of the child; and that they all believed it. That there were present at the tree where and when John Black was hung, Prior Jones, Sam Squirrelhunter, Tom Robinson, Henry Owens, Richard Gradington, and witness; don't know whether the defendants, Smith Jackson and Burrill Jackson, were at the hanging or not; they started from the house with John Black, and were with him a hundred yards from the house. Henry Owens held rope and pulled deceased up; let him [deceased] down, and demanded of him where the child was; let him down again, and demanded where the child was; and Tom Robinson cried, 'Hang him! that he would ruin all of them if turned loose,' and so they hung him up, and tied the rope, and left him hanging. Witness couldn't see defendants at the tree, because so dark; could only recognize voices as would speak; but there were others present at the hanging, but I could not distinguish them in the dark. That some parties that went to the house had floured their hands and necks. The child is now alive, and with its parents."

This is the entire testimony of one who was, by his own confessions, present at the perpetration of the murder and conversant with the purposes, plans, motives, and intentions of the parties who committed the act, and who was, and we think properly, regarded at the trial as a participant in the commission of the crime, and whose evidence it became

necessary to corroborate by the testimony of other witnesses, not only as to the fact that John Black had been murdered, but tending to connect these appellants with the commission of the crime.

To what extent is this accomplice corroborated by the testimony of other witnesses?   Barbary Black testified that she was in the house from which the deceased was taken out and hung.   She says: " The confusion and noise waked me up; did not know time of night; was some fire in the house, a chunk burning; took one of the parties to be Hoodlin Henry, and one to be Bill Peterson, and one, uncle Smith Jackson; did not know for certain it was either; was very much frightened."

James Hord testified " that Burrill Jackson had borrowed his coat the night John Black was hung, after supper; that it was a bluish coat, cloth; had it about two years; borrowed it after supper, at house of defendant Burrill Jackson.   I stayed at my cousin's, about one hundred yards from defendant Burrill Jackson; that he told Eliza, the wife of deceased, on the next Tuesday following, that he loaned his coat to Burrill Jackson on that night."

B. M. Hubbard testified, among other things: " We tracked two of the horses' tracks from Black's dead body into Burrill Jackson's horse-lot; and that two of the tracks stopped there, and two or three went on.   The two horses in Burrill Jackson's lot were horses trailed from the tree to which Black's body was hung.   One of the horses that made the tracks was in Burrill Jackson's lot, and was his horse.   It rained on the night of the hanging, just before Black was taken from his house, so that the tracks of the parties who did the hanging could be easily traced — all tracks before the rain being completely blotted out by the rain, and those made after the rain being very plain."   Agreeably to the testimony of this witness, the deceased was hung on the place of the witness.

Eliza Black, who appears to have been the wife of the murdered man, was on the stand as a witness for the State, and from her testimony, as set out in the statement of facts, we make the following extract:

"John Black is now dead; he came to his death by hanging; that on Saturday night before last Christmas some parties came to John Black's house, suppose about midnight, masked, and took John Black out and hung him. They broke the door down, and four of the parties came into the house; that the names of the four who came in the house were Tom Robinson, Bill Peterson, Smith Jackson, and Burrill Jackson, and that they had guns in their hands; that they told John Black to march out, and took John Black out and carried him off. Witness saw John Black, deceased, next day when he was brought back home; he was then dead. This occurred in Bastrop County, state of Texas, on Saturday night before last Christmas, being about nine months ago. I recognize Smith Jackson and Burrill Jackson, the defendants now in court, as two of the parties who came into the house and carried John Black away."

During a seemingly rigid cross-examination, this witness said, among other things, that Burrill Jackson had on Jim Hord's coat, and that she only recognized the parties in the house from their general appearance, but knew them; that she knew the defendants well, having lived close to them for about five years.

This testimony, we are of opinion, affords, if true, a sufficient amount of corroboration of the testimony of the supposed accomplice to entitle his evidence to consideration by the court and jury.

The evidence was all before the jury. Not only the words spoken by the witnesses, but their manner and bearing whilst testifying in a most momentous investigation, were open to view and to cross-examination, as well as to

the comment and criticism of counsel. The jury must have believed the testimony, else they could not, under the charge of the court, have found the defendants guilty. The whole case, with its evidence, again passed in review before the judge on the hearing of the motion for a new trial, and the testimony was again held to be sufficient to support the verdict. This court would only be justified in setting aside a verdict upon the evidence when it is shown that the verdict is against the evidence, or without a sufficient amount of legal testimony to justify a conviction for the crime. We fail to discover any error in the action of the court below in refusing a new trial.

A point is made in argument to the effect that the evidence tends to show that, by the treatment the deceased is shown to have received at the hands of the mob who finally hung him, he had been deprived of his life before he was finally hanged by the neck, either by roughly being dragged away to the final scene or by strangulation by the rope fastened about his neck, by which he was dragged along; and it is not to be denied there is some testimony tending in that direction. Yet this but creates a conflict in the testimony at most, with which it was the peculiar province of the jury to deal, and is wholly irreconcilable with the history of the transaction as detailed by the accomplice, supported, as we have seen, by other testimony. As to the sufficiency of the testimony, the court below was in a better condition to determine than this court, who have but the bare record as a guide, whilst, below, the witnesses were personally present.

We are not unmindful of the importance of the opinion now being rendered, or of the solemn responsibility resting upon the court in passing upon the merits of this case as shown by the record before us, and we have brought to its determination the most careful attention, without discovering that the appellants have not had a fair and impar-

tial trial, in which every material right of theirs has been carefully guarded; and they having been legally adjudged guilty of having participated in the perpetration of a heinous crime, upon a sufficiency of competent testimony, our duty is plain.

The judgment of the District Court is affirmed.

*Affirmed.*