*Savage, Ch. J.
These defendants, and six others, were indicted in August last, (1826,) for a conspiracy to defraud several incorporated companies, and several individuals, named in the indictment. A trial was had of all the defendants, in the oyer and terminer in September last; but no verdict. Another trial was had of three defendants, and some of the others in November last; when the defendants, now before us, were convicted. But before judgment was given, the cause was removed into this court by certiorari; and at the last May term, a new trial was granted, for irregularity in receiving a juror on the second trial, who, when called to the book, admitted he had formed and expressed an opinion as to the guilt of the defendants, from having heard the whole testimony on the first trial. Joseph Gr. Swift, was tried separately in the oyer and terminer, after the trial of these defendants, and was acquitted.
According to the usual, and, I believe, invariable practice of this court, the record was retained ; and a trial or* *380 dered in the circuit court, to be held in and for the city of ¡¡Slew-York. This direction was given to the cause on the 29th of May; when the district attorney rose, and, addressing the court, remarked that he should not proceed on this hidictment; but would procure a new indictment in the court of oyer and terminer. The object of this communication probably was, to give notice to the defendants, then in court, that no proceedings would be had-in the circuit, provided a new indictment could be procured in the oyer and terminer. I infer such to have been his object, as this court was not concerned to know what were the intentions of the district attorney. On the next, or succeeding day, these defendants ¿ntered into recognizance to appear here at this term, and in the mean time, to attend at the next circuit court, to be held in and for the city and county of Mew-York. On the 13th of June, the district attorney gave notice to the defendant, Barker, that the trial would be brought on against the three defendants, Barker, Vermilyea and Davis, on the 17th. The trial was, in fact, moved on the 19th of June; when the defendant, ^Barker, moved for a separate trial, which was refused ; the judge saying that each case should be submitted to the jury separately, in regard to each defendant. The defendant, Vermilyea, then moved to put of the trial, on the ground of the absence of a material witness, Joseph Gr. Swift; which the judge decided should be granted. But, on the district attorney offering to admit that Gren. Swift, would swear what the defendant averred, reserving the right of contradiction and impeachment, thejudge directed the defendants to specify what Swift would prove; and, on receiving such specification, ordered the trial to proceed; an affidavit having been read, that there had been previously two trials of this cause in the oyer and terminer. The defendants, Davis and Barker, also moved for a postponement of the trial, on account of Gren. Swift’s absence"; which motions were on the same grounds as that of Vermilyea. A jury was then impanneled and sworn. The defendants, Vermilyea and Barker, were convicted, and Davis acquitted.
The defendants, Barker and Vermilyea, now move for a *381 new trial, on several grounds; some of which até common to both, and some relied on by Barker only. These grounds I will briefly consider, though not in the order in which they were arguéd.
1. Barker’s papers were withheld, and in possession of the district attorney. It certainly does not appear that Barker used due diligence to obtain these papers. It is true, that the district attorney had them, and informed Barker that he had them not. But they would have been obtained, if the mistake had been explained ; or, if then refused, application should have been made to the court, either to compel their delivery, or to postpone the trial on the ground that this was refused. [1]
2. Exception has been taken to some of the .jurors, which has béen very properly abandoned as to all except Bruen. The declarations relied on, were made nine months before the trial, and soon after the indictment found, What the juror’s opinion was founded on, does *not appear. But, as he was not on the grand jury, it could not have been on hearing the testimony. It was probably on common report. But the charge is denied by the juror himself. Other facts are shown, which render it improbable that the words imputed were ever spoken; and his conduct in the jury room shows, that if they were spoken, he had changed his Opinion before the trial, He then seemed rather friendly to Barker than otherwise.
3. The mode of drawing the jury was correct. The act, (1 R. L. 331, s. 20,) directs, that the clerk of the court, or some other indifferent person, by direction of the court,, shall, in open court, draw out twelve of the papers or parchments, one after another; and if any person, whose name shall be so drawn, shall not appear, or be challenged and set aside, then such further number thereof shall be drawn as shall make up the number twelve, who do appear, *382 after all causes of challenge allowed, as fair and indifferent, &c. My construction of this act is, that if a juror does appear when first called, the panel is to be gone through, if necessary, for the purpose of obtaining a full jury, before the clerk shall call, a second time, those who were absent on the first call. I will not say, however, that should the contrary method be adopted, that would be good ground to set aside a verdict, provided there was no reason to suspect the fairness of the proeeeding.(a) I desire to be understood as saying merely, that the mode adopted in this instance corresponds with my notions of correct practice in drawing a jury under the statute.
4. Another ground is, the acquittal of Davis. He has become a competent witness in virtue of his acquittal; but the absence of all authority on the point, is a strong argument against the sufficiency of this ground for granting a new trial. [1] Such a rule would be highly inconvenient in practice. The proper course was, if the testimony against *Davis was slight, to have the jury pass on his case, and then introduce him as a witness on behalf of his co-defendants. Such testimony is not newly discovered, though the acquitted defendant is now, for the first time, competent as a witness. This ground, of itself, cannot be considered sufficient, though I will not say, that, among other considerations, it is not entitled to some weight.
5. A separate trial was refused. The judge, who pre sides at a trial, must exercise a discretion upon many questions. In The People v. Howell, (4 John. 302,) it is said, that in all cases where the right to peremptory challenge does not exist, defendants jointly indicted may be tried either jointly or separately; and when two or more persons are charged in the same indictment with a capital offence, a separate trial, without the consent of the public prosecutor, is not matter of right in the parties, but of discretion in the court. (U. States v. Marchant, 12 Wheat. 480.) In case of an indictment for a conspiracy to commit a joint *383 offence, the discretion of the judge ought not to be lightly interfered with. But the defendants had substantially the benefit of a separate trial. The testimony, applicable to each, was separately laid before the jury, and they passed separately upon it in that way. To have put each upon separate and successive trial, might have consumed unnecessary time, and unduly embarrassed the prosecution. That the jury were capable of separating the testimony applicable to each, is proved by the fact that one of the defendants was acquitted.
6. The defendants asked for a postponement of their trial, on account of the absence of a material witness. This is a good ground for putting off a trial under certain circumstances. When there is no cause for suspicion that the object is delay, it is sufficient to state that the absent witness is material ; that he cannot be procured at the time when the trial is about to be brought on; and that there is reasonable ground to expect his future attendance. But if there are suspicious circumstances attending the application, then the court will require the party to be more minute in stating the circumstances and facts on which the *application rests. This general rule is found in books of practice both civil and criminal. (2 Tidd, 708; 1 Archb. 210; 1 Dunl. 586, 7; 1 Chit. Cr. Law, 492.)
The case of The King v. D‘Eon, (1 Bl. Rep. 510, and 3 Burr. 1513,) is a leading case on this subject; and contains the principles which have since prevailed in relation to putting off trials. Lord Mansfield says in that case, “ three things are necessary to put off a trial. 1. That the witness is really material, and appears to the court so to be. 2. That the party who applies has been guilty of no neglect. 3. That the witness can.be had at the time to which the trial is deferred.” Wilmot, J., said the rule is the same in criminal and civil cases; and Yates, J., said, whatever indulgence the law gives to defendants in civil cases, it ought, a fortiori, to give in criminal.
In that case, however, the motion was denied; the court not being satisfied upon any of the points necessary to' be sustained. First, it was apparent that the witnesses named *384 could not be material, as they had left England, and gone to France in November or December; and the libel, in respect to which the defendant was indicted, was not published till March or April after: Secondly, the defendant had notice of the information on the 12th of April; and no effort had been made on the 30th. of June, when the motion was made, to bring over the witnesses: Thirdly, there was no probability that the persons named would return to England. They were subjects of France, in the service of the king of France; and would not probably be sent by him to testify against his then minister, who had been libelled by D‘Eon. The whole court, therefore, were clearly of opinion, that putting off the trial could not tend to advance justice; but on the contrary would delay it.
In the case of The King v. Jones, (8 East, 31 to 37.) the defendant moved to put off his trial, till he could procure testimony from Barbadoes, Grenada and Dominica. The motion was made upon the common affidavit; but the court required him to show in what respect the evidence was material; recognizing the whole doctrine in D‘Eon’s case. Lord EUenborough intimated that in ordinary cases, *the common affidavit was sufficient when the trial was to be put off from one assizes or sittings to the next; but when so long a time must intervene, it was necessary to be more particular; there being a temptation to offenders to gain time. Lawrence, J., said it was not required of him to state his evidence, but the nature of it. Accordingly, at another day, he made another affidavit, showing generally the nature of the transactions in question; and that the persons named were acquainted with them; that the application was not for delay; but to obtain evidence which he was advised and believed to be material. The motion was not further opposed by the attorney general; and was granted, the court relying on the case of The King v. D‘Eon.
This court has several times granted a new trial, when, as it appeared to us, the defendant’s application to put off his trial should have been granted. In Ogden v. Payne, (5 Cowen, 15,) the judge refused to put off the trial on the common affidavit; requiring the defendant to state what *385 he expected to prove by the witness, who was attorney for the plaintiff. This he refused to do, and the trial proceeded. We granted a new trial, saying that the practice requiring a specification of the testimony did not apply, unless circumstances of suspicion are made to appear. In the case of The Bank of Utica v. Hilliard, (May term, 1826,) we granted a new trial after a former verdict had been set aside; the judge at the circuit having refused to put off the trial on an affidavit, that a material witness had lately removed from Lockport to the state of Ohio, as he, the defendant, was informed and believed, about three months before the trial; and that he expected to procure the attendance of the witness at the next circuit. The judge thought the affidavit too loose in merely stating information and belief of the witness’ removal. We were of opinion that it was sufficient in the first instance; no suspicion existing that delay was the object.
In the case of Hooker v. Rogers, (6 Cowen, 577,) the witness was unable to attend; and this we held sufficient cause for putting off the trial; saying, that substituting an ^"examination of witnesses on interrogatories for their personal attendance, might prejudice the defendant’s rights. He was entitled to their personal attendance.
In all cases of this description, the questions are. 1. Is the witness material ? 2. Has the defendant been guilty of any laches ? 3. Can the attendance of the witness be procured at the next court? If these questions can be satisfactorily answered by the defendant, his trial should be postponed.
Let us see how the present defendants appeared, and answered these interrogatories in June last, when their causes were brought on to trial. The materiality of the testimony, was sworn to by them, not by way of the general affidavit; but stating particulars to the satisfaction of the judge who held the court. This was going farther than was necessary in the first instance, unless laches were imputable to them. As to the 2d particular; can it be said that any culpable negligence was imputable to them ? There had bean two trials in the oyer and terminer, when this cause re *386 moved by certiorari. After the conviction of these defendants, Gen. Swift was acquitted. He then became a tent witness. In April, he left the state, and went to Tennessee. Could the defendants have examined him as a witness, had that been established as necessary at any stage ? That it is not necessary, is strongly intimated in Hoolcer v. Rodgers. But it would surely have been premature in this case. The defendants knew not, when Gen. Swift left the state, that a new trial would be granted at all: and could they have anticipated our decision on that question, there was another difficulty: they could not foresee whether their cause would be tried at the circuit or the oyer and terminer. It seems to me, therefore, that any attempt to examine Gen. Swift would have been premature and irregular. In omitting this, then, there was no laches. It is said, however, that, at the May term, the defendants should have applied for a commission, and for a postponement of the trial until the return of the commission, or until the attendance of the witness could be procured. It is certainly true, that this might have been done. *But are they not excused for not making this application, by the declarations of the public prosecutor, who intimated very strongly that he should proceed no farther upon this indictment; and gave no notice of an intention to try till four days before the circuit. These circumstances surely are entitled to consideration ; and go far in excuse for the negligence of the defendants in not making some proper motion, after this court had decided that the cause should be tried at the circuit.
But if laches are imputable to them, they have done all that can be required. They have disclosed what they expect to prove by them witness. I am aware that this is not now entirely conceded j but it was conceded by the judge at the circuit, who was in the first instance the judge of the sufficiency of their disclosure. Without laches, the general affidavit would have been enough. But being guilty of laches, they atone for it by disclosing the evidence they expect from their absent witness. The judge was satisfied on that point; and I think correctly.
*387 As to the third particular, the defendants swore that the wjtness had sent a message to one of them, and the other was informed and believed, that he would attend when it should become necessary. These affidavits were not contradicted by the district attorney; and there is no presumption against the attendance of the witness, as there was in D'Eon's case. It does not appear from the papers before' us, that the probability of the witness, attending on a future occasion was doubted by the judge; for he decided that there was sufficient cause shown for the postponement.
Thus far, the judge appears to have acted discreetly and correctly. If he erred at all, it was in compelling the defendants to go to trial on the admission of the public prosecutor, that if their witness was present, he would swear as the defendants expected he would.
If it be admitted that the defendants were entitled to the testimony of the witness, then the only question is, had they the benefit of his testimnoy ? In my judgment, most clearly they had not. When testimony was given *showing, prima facie, that the witness could not swear as it was admitted he wohld, without being guilty of a contradiction, could the jury shut their eyes to the fact which was staring them in the face, that Glen. Swift had not sworn anything about it ?
It is true that had the witness been examind on commission, (and this is all the testimony the defendants are sure of obtaining,) his testimony might still have been attacked in the same way. But they will then, at least, have the oath of the witness; and such interrogatories may be put as will lead to a full disclosure of all the facts necessary to every explanation. But should the defendants procure the personal attendance of the witness, and this does not seem to have been thought improbable at the circuit, then it cannot be pretended but that the defendants would be in a much better situation, than with the stipulation of the district attorney.
The practice of requiring concessions in such cases is novel; and I apprehend not well calculated to advance jus *388 tice. But if to be encouraged, it seems to me that the. prosecutor should admit all that the defendant can possibly tain by the witness; which is the truth of the facts proposed to be proved. Such seems to have been the opinion of this court in Brill v. Lord, (14 John. 341.) That cause came up on a certiorari from a justice’s court. The defendant below wanted an adjournment, on the ground of the absence of a material witness. The plaintiff proposed to admit what was expected to be proved by the absent witness, and the cause proceeded to trial. This court held the proceeding regular. They said the object of the adjournment, as avowed, was to procure the testimony of a certain witness; and the plaintiff offered to admit, and did admit what it was alleged the witness would prove. If the plaintiff will admit the testimony, no time can be wanted for that purpose; besides, it is added, in this case the defendant agreed to go to trial upon such admissions; and he ought not afterwards to be permitted to violate such agreement. In that case, the court did not place the regularity entirely upon the admission of the testimony *by the plaintiff; but they say emphatically that the defendant had agreed to go to trial upon such admissions. Had the justice then refused the adjournment oh the plaintiff’s admitting that the defendant’s witness would swear as the defendant alleged, and he had protested against going to trial upon such admission, there cannot be a doubt that this court would have reversed the judgment.
Though this is comparing small things with great, still the principle is the same. The defendant before the justice, by his oath, was entitled to an adjournment. So were these defendants. The right of the defendant before the justice arose under ttie statute, and the right of these defendants by virtue of the common law. Both laws are of equal obligation. When the defendants here and before the justice had, by their affidavits, brought themselves within the provisions of the law, there was no more discretion in the one case than in the other. The discretion of both was a legal discretion: the very same discretion which *389 we are now called upon to exercise in deciding the present motion.
Under these views of the rights of the parties, and the power and discretion of the court, I feel hound to say that an error was committed in compelling the defendants to accept of the offered stipulation: and, of course, that a new trial must he granted.

 See Com. v. Williams, 2 Ashm. 69; Gilbert v. State, 7 Humph. Rep. 524; Bennett v. Com., 8 Leigh, 745; Com. v. Benesh, Thatch. Cr. Cas. 84; State v. Harding, 2 Bay, 267; Friar v. The State, 7 How. Miss. Rep. 365; The State v. Blennerhassett, Walker’s Rep. 7.
See.fdrthér Waterman’s Archhold’s Cr. Practice & Pleading, tit New Trial.

 Would not the statute be considered as directory merely; and satisfied by either course, if no abuse appear ? (Vid. Cole v. Perry, 6 Cowen. 584).

 See U. S. v. Gilbert. 2 Sumner. 20; Com. v. Chauncey, 2 Ashmead, 90.