### Frank Huebner *v.* The State.

1. Continuance. — An application for a continuance on account of the absence of a witness is insufficient if it fails to set out the facts which the witness is expected to prove. A general allegation that the witness will prove the defendant's innocence will not suffice.

2. Diligence. — It is incumbent on a defendant, as soon as he is arrested, to employ the means provided by law to secure the attendance of his witnesses and prepare for his defense. Neglect and delay are at his own peril.

3. New Trial to Obtain Testimony of an Acquitted Co-defendant. — Appellant and one R. were jointly indicted for theft, but a severance was had on the application of R., and the appellant, at the instance of the

county attorney, was first tried, and was convicted. Then R. was tried and acquitted. *Held*, that appellant, having been deprived by law of the benefit of R.'s testimony, was, upon a proper showing of its materiality to his defense, entitled to a new trial to obtain it, notwithstanding he had not, by availing himself of the act of 1874, sought to defer his own trial until after that of R.

4. RECORD — JURY. — In a felony case the judgment entry stated that a jury of twelve good and lawful men were impaneléd, etc., and then proceeded to name the jurors, but set out the names of eleven only, without noting any waiver of a full panel. *Held*, that this is fatal to the conviction. The recital of the names precludes any presumption that there was a legal panel.

APPEAL from the District Court of Bexar. Tried below before the Hon. G. H. NOONAN.

The indictment was for theft of a cow. The jury found the appellant guilty, and assessed his punishment at two years in the penitentiary.

*Waelder & Upson*, for the appellant.

*George McCormick*, Assistant Attorney General, for the State. Appellant has assigned two errors on which he relies for a reversal of this cause. The application for a continuance was properly overruled, first, because it does not show that the prisoner used any diligence to secure the attendance of the witnesses whose testimony he sought; second, he says he had " the witnesses subpœnaed and there has been no return." Upon this point see *Murry* v. *The State*, 1 Texas Ct. App. 174; *Cantu* v. *The State*, 1 Texas Ct. App. 402; *Buie* v. *The State*, 1 Texas Ct. App. 452; *Grant* v. *The State*, 2 Texas Ct. App. 163; *Swofford* v. *The State, ante*, p. 76.

2. The cases of *Rich* v. *The State*, 1 Texas Ct. App. 206, and *Lyles* v. *The State*, 41 Texas, 181, cited by counsel in support of the motion for a new trial, do not support the proposition assumed.

*Lyles* v. *The State* was decided before the passage of the

act of 1874 (Gen. Laws 1874, p. 29), amending article 587 of the Code of Criminal Procedure.

The court, in *Lyles* v. *The State*, said that the acquittal of the prisoner's co-defendant placed him in a condition to introduce evidence, on a new trial, which was not in his power to use before, and authorized the granting of the new trial; seeming to dwell on the fact, and make it decisive of the question, that the prisoner could not have used the evidence before his trial and conviction.

Now, this was the reason the Legislature amended the article and established a different rule of procedure, giving to defendant the right to use such evidence by claiming a severance for that very object.

This court, in *Rich* v. *The State,* decided the case upon the ground that the jury had not been sworn as required by law; and the new trial awarded by this court was not because Rich was entitled to the evidence of his co-defendant.

Besides, this question, as will be seen from the opinion of the court, was not fully presented by either counsel for the state or the prisoner, and the case should not be considered as establishing a rule upon the subject.

If the prisoner here desired the testimony of the witness Rymus, his mode of securing it was plain and simple. He knew whether there was any evidence against Rymus or not, and he ought not to be allowed to play at chance with the courts, as he now proposes to do.

The new trial ought not to have been granted upon the proposed newly-discovered evidence, for there is, to say the least of it, a doubt upon the point of diligence, as also to the character of the evidence sought — in which cases it becomes a matter of discretion whether the court below should grant a new trial, and this court cannot rightfully interfere. See the opinion of this court in *Bronson* v. *The State*, 2 Texas Ct. App. 46. Also, *Shaw* v. *The State*, 27 Texas, 752; 1 Gra. & Wat. on New Tr. 489; *Brown* v. *The State*,

16 Texas, 127; *Goins* v. *The State*, 41 Texas, 334; *Koontz* v. *The State*, 41 Texas, 572.

3. The record does not give the names of the twelve men who composed the jury, but states that it was composed of twelve men.

This point is discussed by WINKLER, J., in the opinion of this court in *Rich* v. *The State*, 1 Texas Ct. App. 206. The court say: "We might, perhaps, be warranted in presuming that each of the jurors named was a competent juror; or, if the record had stated that the jury was composed of twelve jurors, we might be authorized to presume the clerk had omitted a name in transcribing the record," etc.

ECTOR, P. J. The first question which presents itself in the record for our decision is the action of the District Court in overruling defendant's application for a continuance. The indictment was found on December 6, 1877. The defendant was arrested on the 15th day of the same month.

He states in his application that he had a subpoena issued on December 18, 1877, for certain witnesses, which has not been returned; that the testimony of these witnesses will preclude the idea, beyond the shadow of a doubt, that defendant had anything to do with the taking of the animal he is charged with stealing. This is a conclusion of affiant, without giving the facts on which it is based. The defendant should state fully the facts, so that the court could determine their materiality.

The application fails to show that defendant exercised proper diligence to procure the attendance of these witnesses at the trial. One of the witnesses was defendant's wife, and it is very unreasonable to suppose that he could not have had her present had he desired it. It is the duty of a defendant, as soon as he is arrested, to use the means at his command to have such witnesses as he needs at his trial,

and to be ready to make his defense. If he fails to do this, and suffers from his neglect, it is his own fault.

The defendant, Huebner, was jointly indicted with John Rymus. A severance was had, on the application of Rymus, and Huebner was, at the instance of the county attorney, first put on trial, and was convicted. His co-defendant, Rymus, was then put on trial, and was acquitted.

The second error assigned by defendant, Huebner, is that the court erred in refusing him a new trial. The third ground set out in the motion for new trial is that defendant has not had a fair trial, being deprived of important and material testimony to his defense, particularly the testimony of John Rymus, which defendant could procure from no other source, as will appear from the affidavit of Rymus, attached to the motion.

The materiality of the testimony of Rymus is shown by said affidavit, to assist defendant in making his defense, and, while it may not be newly-discovered evidence, it was not available, under our statute, for the defendant, Huebner, when he was on trial. The law had placed it beyond his reach. We believe that the District Court committed an error in refusing to grant the motion for new trial; for which error the judgment must be reversed.

The assistant attorney general insists that the defendant, Huebner, did not avail himself of the privilege secured to him by the law of having the testimony of Rymus on his, defendant's, trial; that he had an opportunity to do so, but declined it. See Gen. Laws Fourteenth Legislature, 29.

We can well understand why Huebner did not make the affidavit required, asking that his co-defendant, Rymus, should be first tried. He might not have been able conscientiously to have done so. Perhaps he could not swear that he believed there was no evidence against his co-defendant, while perfectly confident of his own innocence.

Besides this, the privilege referred to was one of which

he could have availed himself on the trial by making the required affidavit; his declining to do so did not, after the acquittal of Rymus, estop him from asking a new trial to give him the benefit of Rymus' testimony, if it was made to appear to the court, by the affidavit of Rymus, that his testimony would be material to Huebner on another trial.

The question we are discussing is not open. It has been decided in a number of courts of last resort.

In the case of *Rich* v. *The State*, 1 Texas Ct. App. 206, defendant made a motion for a new trial, to obtain the evidence of an acquitted co-defendant. Two defendants being jointly tried for murder, one was acquitted, but the other was convicted of murder in the second degree; whereupon, the latter moved for a new trial on the ground that his acquitted co-defendant was a material witness in his behalf, and supported his motion with the witness' affidavit, disclosing his presence at the rencounter, and statements respecting it. This court held that the witness was rendered competent by his acquittal, and no diligence could have procured his testimony prior thereto; wherefore, if his testimony was material to the defense, there may have been error in refusing a new trial.

And in the case of *Lyles* v. *The State*, 41 Texas, 172, the Supreme Court held that, when there are two parties jointly indicted and tried, one of whom is acquitted and the other convicted, it is error in the court below to refuse a new trial to the party convicted, when his motion is sustained by the affidavit of the party acquitted to facts material to the defense, which, by reason of the joint trial, could not be used in evidence.

And the Supreme Court of New York, in the case of *The People* v. *Vermilyea*, 7 Cow. 369, decided that a new trial ought to be granted under such a state of facts, " not on the ground of newly-discovered evidence, but on the ground that important evidence was now within the power of de-

fendants to produce that the rules of law had put beyond their reach on the former trial.''

The record states that twelve jurors came, etc., but only eleven are named. This, we believe, is fatal to the judgment.

In the case of *Doebler* v. *The Commonwealth*, 3 Serg. & R. 237, the defendant was put on his trial for felony. Some time after the trial had commenced, the court perceived that one of the jury, George Fisher, was insensible from intoxication, and directed him to withdraw and another juror to be called in his place, of which a record was made — the attorney for the commonwealth and the attorney for the prisoner neither assenting nor dissenting. The record states that twelve jurors came, etc., but only eleven are named — the name of George Fisher being omitted, and the one called in his place making the twelve. But the court reversed the judgment because it did not appear from the record that twelve jurors were sworn. This case is cited approvingly by the Supreme Court of Pennsylvania, in the case of *Dum* v. *The Commonwealth*, 4 Pa. St. 387, as establishing that presumptions are not allowed even when they would arise almost inevitably from the record. Where the record sets out the names of the jurors, and, upon an examination, there is any less number than twelve, unless the record discloses that a less number than twelve was accepted by both parties, or that one or more of the jury were excused under some special provision of law, it is fatal to the judgment.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*