## SAMUEL H. MYERS *v.* THE STATE.

1. CONTINUANCE. — Even before the adoption of the Revised Codes an application for a third or subsequent continuance was addressed to the judicial discretion of the trial court, and its action thereon was not revised on appeal unless an abuse of that discretion was made manifest.

2. SAME. — A severance to enable one defendant to obtain the testimony of another, by a prior trial and acquittal of the latter, is possible only when they are jointly indicted; and the purpose of such a severance is frustrated when a conviction is the result of the prior trial. An appeal from the conviction does not entitle the untried defendant to a continuance until the appeal shall be decided, and, by possibility, the appellant ultimately acquitted.

3. CHANGE OF VENUE. — The propriety of hearing testimony for and against applications for change of venue on account of prejudice is now well settled. The rulings on this subject in *Rothschild v. The State, ante,* p. 519, referred to with approval. Whether a witness examined on this inquiry has an opinion upon the guilt or innocence of the defendant is irrelevant and immaterial.

4. PETIT JURORS. — Sect. 26 of the jury law of 1876 authorizes the challenge of a petit juror who has "served for one week in the District Court within six months preceding, or in the County Court within three months preceding." *Held,* that the word *preceding* has reference to a prior term of the court, and that previous jury-service during the pending term is not cause for challenge.

5. SAME — PRACTICE. — The overruling of a good challenge for cause is not material error when it does not affirmatively appear that the ruling forced an objectionable juror upon the defendant.

6. CHARGE OF THE COURT. — Though, as held in *McMillan* v. *The State, ante,* p. 142, a charge is erroneous which requires the jury to convict unless they find the defendant to be innocent, yet the context of the instruction is to be considered, with a view to determine whether such is the purport of it as an entirety.

7. ACCOMPLICE TESTIMONY — CORROBORATION. — The legal requirement in the corroboration of an accomplice witness is that, aside from his testimony, there be "other evidence tending to connect the defendant with the offence committed." This does not necessitate a corroboration of accomplice testimony circumstantially and in detail.

APPEAL from the District Court of Johnson. Tried below before the Hon. D. M. PRENDERGAST.

The indictment and conviction were for the murder of Mrs. Mary Ann Hester, on February 21, 1877, by shooting her with a gun. Thomas J. Myers, who is a half-brother of the appellant, and James M. Bowden, who is a brother-in-law, were separately indicted for the murder. Mrs. Hester was the step-mother of the appellant and Thomas J. Myers, having been the third and surviving wife of their deceased father, of whose will she and Thomas J. Myers were executors. She married J. A. Hester about six weeks before February 21, 1877, and they occupied the old Myers homestead; and on the evening of that day, while sitting at her supper-table with her little son, she was shot through the only window in the room, and was instantly killed.

In so far as the evidence is involved in the rulings of this court, it is sufficiently disclosed in the opinion, and no detail of it is necessary here. In Vol. VI. of these Reports, p. 1, will be found the case of *Thomas J. Myers* v. *The State,*

and a full recapitulation of the material evidence upon which the conviction in this case, as well as in that, was had.

At the trial of this case, which was had at the December term, 1878, of the District Court of Johnson County, the jury found the appellant guilty of murder in the first degree, and judgment of death by hanging was rendered against him. His motion for a new trial was overruled, and he appealed. Able, elaborate, and zealous arguments were filed in this court by his counsel, and also by counsel for the State ; but their length precludes their insertion.

*John J. Good*, *W. Poindexter*, and *A. Bradshaw*, for the appellant.

*Thomas Ball*, Assistant Attorney-General, and *Watts, Lanham & Roach*, for the State.

WINKLER, J.    Of the several errors assigned, on account of which it is urged the judgment of the District Court is erroneous and should be reversed, the following appear to be of the most importance and to bear most especially on the right of the appellant to a fair and impartial trial in accordance with the law of the land : —

1. Did the court err in overruling the defendant's application for a continuance?

2. Was there error in refusing to grant a change of venue?

3. Were the rights of the defendant to be tried by an impartial jury impaired by the rulings of the court in the formation of the jury?

4. Did the court err in its instruction to the jury as to the law of the case in the charges given, or in refusing to give certain special charges asked by the defendant's counsel on the trial below?

Other questions are presented by bills of exception and the assignment of errors, which, in the main, so connect themselves with the questions above set out as to be con-

sidered in connection therewith, or as incident thereto, so far as deemed of any material importance in determining the merits of this appeal.

1. With reference to the continuance. From the judgment-entry we make the following extract as showing the state of the continuances: "Whereupon came to be heard the defendant's application for a continuance, the same being the fourth application," and it was overruled. The record does not state, nor lead to the inference, that the ground of the refusal was that it was the fourth application. The above extract is made as the only authoritative statement as to the number of continuances applied for, and we take it as being conclusive that the one overruled was, as stated, the fourth application. This not being either a first or a second application for a continuance, under the statute as it stood before the adoption of the Revised Code of Procedure, and at the time the proceeding in question was had, it comes within the following rule: "Applications for continuances not based upon the statute, and which do not meet its requirements, are addressed to the discretion of the court to whom they are made, and should be granted or refused according to the circumstances, and will not be revised on appeal except in a clear case of abuse of that discretion." *Nelson* v. *The State*, 1 Texas Ct. App. 41; *Baldessore* v. *Stephanes*, 27 Texas, 455; *Jackson* v. *The State*, 4 Texas Ct. App. 292. The discretion, however, is not an irresponsible one, but must be exercised within the bounds of settled rules of practice. In *Hyde* v. *The State*, 16 Texas, 445, the following quotation from the opinion of the court in *The People* v. *Vermilyea*, 7 Cow. 390, was cited with approval as illustrative of the common-law rule on the subject: " The rule is substantially the same in civil and criminal cases, though in the latter the authorities all agree that the matter is to be scanned more closely on account of the superior temptation to delay and escape the sentence of the law. * * * In cases where the com-

mon affidavit applies the court has no discretion. The postponement is a matter of right, resting on what has become a principle of the common law. But when there has been laches, or there is reason to suspect that the object is delay, the judge at the circuit may then take into consideration all the circumstances, * * * and grant or delay the application at his pleasure. Where the subject takes this turn, the application ceases to be matter of right, and rests in discretion." See *Hyde's Case*, and authorities there cited; also *Jackson's Case, supra.*

In this case the defendant asked a continuance on account of the absence of witnesses, — Thomas J. Myers, Jane Ann Myers, Diana Tatum (now Powell), Mat Rawlins, Thomas Koon, and L. B. Terwelliger. As to Koon and Terwelliger, the showing as to diligence is not sufficient. The affidavit states that subpœnas and attachments have been issued for them, which have been returned not served, the witnesses not being found; but there is no such stating of the diligence as that we can see from the application it was legal diligence; and further, the affidavit states, in effect, that his efforts to ascertain where they live have been ineffectual. As to Mrs. Myers and Mrs. Tatum, or Powell, the statement of facts shows that they were both present at the trial and testified at the instance of the defendant. The absent witness Mat Rawlins, it is stated in the affidavit for a continuance, resides in Tarrant County; that the witness had been served with a subpœna, and "that he had caused an attachment to be issued to Tarrant County for said witness, which has been returned not served;" and that the witness had been in attendance upon the court, and had assured the defendant's counsel he would be in attendance. No legal diligence had been used to compel the attendance of the witness. If the defendant chose to risk his promise to attend, he did so at his peril; and further, as to his testimony, it does not appear to have been of such materiality in determining the question of the defendant's guilt as to

have had any influence on the verdict. As to the other remaining witness, Thomas J. Myers, his testimony was inaccessible to the defendant, agreeably to his own affidavit. The desired witness is shown to have been indicted in a separate indictment for the same offence of which the defendant was accused.

"Persons charged as principals, accomplices, or accessories, whether in the same indictment or by different indictments, cannot be introduced as witnesses for one another," so long as they remain in that relation. Penal Code, art. 91 ; former Code, art. 230. The statute, in the same article, provides, however, that persons standing in that relation "may claim a severance, and if any one or more be acquitted, they may testify in behalf of the others ; " and it is claimed here that a severance was had on the idea that there was no testimony against the indicted witness ; but it is further shown that he was indeed placed on trial, but the jury before whom he was tried, instead of acquitting, convicted him of murder. It is urged in behalf of the appellant, and so stated in the affidavit for a continuance, that his said witness is innocent and has appealed, and it is confidently expected that the judgment of conviction against him will be reversed, and that this defendant will ultimately be thus enabled to procure his testimony.

We are not aware that the precise question here presented has been before the court of last resort in Texas except in one case, and that a case of misdemeanor, in which the statute allowing a severance was construed to be to the effect that where a party had procured a severance in order to put another on trial, on the idea that there was no testimony against him, and when, instead of being acquitted, he had been convicted, that this was an end of the matter ; that the law, it was believed, never contemplated that a defendant who had procured this proceeding could delay the trial until the other party could test the legality of his conviction by appeal. *Slawson* v. *The State,* decided at the last

Tyler term, *ante*, p. 63.    The subject of a severance and
its consequences has been further considered in *Rucker* v.
*The State, ante*, p. 549, where it is held that the latter por-
tion of art. 91 of the Penal Code, which authorizes a
severance, and an acquitted party to testify in behalf of
the others, relates alone to those *jointly indicted*, and not
to such as may be prosecuted by different indictments.
So that, from the circumstances surrounding the case, as
shown by the application for a continuance, the fact that
two of the witnesses testified at the trial, the want of dili-
gence as to three others, and the fact that the other
stands indicted, and in the trial court convicted, and being
thereby rendered inaccessible to the defendant, we are of
opinion the court did not err in ruling the application insuf-
ficient and refusing to grant the desired continuance, or in
refusing a new trial on account of this supposed error.

2. The alleged error of the court in refusing to change
the venue away from the county of an almost unparalleled
assassination, and for which the appellant had been indicted
and sought to be placed on trial, is perhaps the most
important question presented for the consideration of the
court.    It is not to be disputed that the Constitution and
laws guarantee to every one accused of crime a speedy trial
before an impartial jury ; and if this principle applies to each
individual juror, how important is it that the entire jury
should not be selected from a community or county where
the very atmosphere is filled with prejudice against the
accused.

Various causes are assigned in the defendant's affidavit for
a change of venue, but so far as the supporting affidavits are
concerned, they present the one fact, "that there exists in
said Johnson County, where the cause is commenced and
now pending, so great a prejudice against Samuel H. Myers,
defendant, that he cannot obtain a fair and impartial trial
in said county."    This supporting affidavit is made by thir-
teen persons, residents of the county, and sworn to before

the clerk of the court.   The prosecution resisted the application for change of venue on several grounds, sworn to by a larger number than those who are stated in the affidavit supporting the application, as credible citizens of the county, personally known to the clerk before whom it was made. The grounds of resistance are : —

1.  A denial of all the statements contained in the defendant's application, and averment that the defendant can get a fair and impartial trial in Johnson County.

2.  That at least four of the supporting affiants are relatives of the defendant or of his brother, and that said relatives, or any others who signed the defendant's application, are not acquainted with the general sentiment of the people of the county.

3.  They say, in effect, that a large majority of those who signed the application reside in the immediate neighborhood, and three of them with a brother of the defendant.

4.  That most of the signers are obscure men, and are not conversant with the sentiments of the people of the county.

5.  That there are at least thirty-three hundred jurors in Johnson County, and that a great many of them have moved into and become citizens of the county since the murder of Mrs. Hester, and reiterate that a fair and impartial trial can be had and a fair and honest jury obtained in the case.

The opposers offer evidence, and ask the court to examine a number of witnesses who, they say, reside in different portions of the county, touching the matter, some of whose affidavits have been prepared, and they aver a want of time sufficient to procure the written affidavits of all.   " They also ask the court to examine and interrogate the persons who have signed the defendant's application herein, touching their knowledge, residence, means and extent of information, and relationship in the premises."

The defendant demurred to the sufficiency of the opposition made by the State to a change of venue, but it does not appear that the demurrer was ruled on by the court.

The grounds of the demurrer were:—

1. Insufficiency in the counter-affidavits.

2. That said counter-affidavits merely set up negative matter.

The action of the court on the demurrer is thus stated in one of the bills of exception: The defendant's counsel asked the court to take up, hear, and pass upon the demurrer, styled exceptions, which the court refused to do, " saying he would hear the evidence and examine the witnesses, both in support of and against the motion for the change of venue, and would then pass upon the demurrer;" and there appears not to have been any further action taken directly on the demurrer. In so far as we are able to determine from the testimony taken on the application for a change of venue, the investigation turned mainly upon the issue presented by the supporting affidavits to the application, that there existed at the time in Johnson County so great a prejudice against the defendant that he could not have a fair and impartial trial in that county; and which was denied on the part of the prosecution, as set up in the first ground of the opposition, and to the means and extent of the information of those who joined the defendant in the application.

It is now too late to question the propriety of hearing, *pro* and *con*, testimony on an application for change of venue, or as to the character of such investigation. Suffice it to say that the investigation seems to have been conducted in accordance with approved rulings both of the Supreme Court and of this court; and from the evidence adduced we cannot say that it was made to appear that the defendant could not obtain a fair and impartial trial in Johnson County. For the rules heretofore adopted on this subject we refer to *Rothschild* v. *The State*, *ante*, p. 519. We are of opinion the court did not err in refusing to change the venue.

Two bills of exception were taken to the rulings of the

court, besides the exception to overruling the application. One was that the court refused to allow time to the defendant's counsel to take down, in writing, "the evidence of the compurgators in their own words;" the other was that the court refused to permit one of the witnesses to answer a question propounded on cross-examination, to this effect: whether or not he had formed or expressed an opinion as to the guilt or innocence of the defendant. The witness was named Reeves. The objections to the rulings are met and answered by the reasons given in the statement of the judge, appended to the bill of exceptions, to this effect: "The refusal referred to in the first bill of exceptions was to delay the time of the court to take down the evidence *verbatim*, but the counsel on both sides were told that they could keep full notes of the evidence, from which a statement of facts could be easily prepared; which was, in fact, done." With reference to the second subject the statement is as follows: "The purpose of this investigation was to ascertain, as far as possible, the state of public opinion, and not the opinion of any particular individual, as to the guilt or innocence of the accused. Hence the witness Reeves was not allowed to answer the question referred to in the second bill of exceptions, but the counsel for the defendant were at the same time told that they might ask the witness any question to show his state of feeling towards the defendant, and whether he was prejudiced against him or not."

Whilst we find no material error in this ruling, we are of opinion that the principal inquiry was to the main issue being tried before the court, to wit: Was there or not, in the county, such prejudice existing as would prevent the defendant from receiving a fair and impartial trial?

3. We are unable to find that any legal right of the defendant to an impartial jury was disregarded in the formation of the jury for his trial. It is true that, agreeably to a bill of exceptions set out in the record, one of the

jurors summoned on the special *venire* from which a jury was to be selected, named Brumley, on being tested as to his qualifications, showed that he had formed an opinion as to the guilt or innocence of the defendant, but that the opinion so formed would not influence his action in finding a verdict; that his opinion was made up from hearing the case talked about, and from reading an account of the evidence in the Cleburne *Chronicle*, but that he thought he could give the defendant a fair and impartial trial. On being further interrogated by the court, he stated that he would give to the evidence which tended to combat or contradict that opinion he had formed as much weight, as a juror trying the case, as he would to the evidence which tended to support that opinion. On further interrogation by the defendant's counsel, he stated that the opinion so formed would require evidence to alter it; that if the evidence given on the trial of the case was the same as that upon which he had founded his opinion, at present entertained by him, his opinion of the guilt or innocence of the defendant would be the same as that then entertained by him, and would not alter it in the trial. Thereupon the juror was by the defendant challenged for cause, which was overruled by the court; and the defendant, being required to accept or reject the juror, challenged him peremptorily.

The judge, in giving a bill of exceptions, makes the further statement: "The juror, in addition to what is stated above, said he had no fixed or settled opinion as to the guilt or innocence of the defendant, and that such as he had was rather an impression than an opinion;" and with this addition he signed the bill of exceptions. The addition made by the judge to the bill of exceptions, which we take as true, that what had been treated as an opinion formed was rather an impression than an opinion, indicates to our minds that the juror did not have a clear conception of his own mind on the subject, and the investigation does

not free the question from doubt. If the juror had formed
an opinion as to the guilt or innocence of the accused, and
entertained that opinion when summoned and about to take
his seat as a juror, and it would require evidence to remove
it, he was not impartial, and a challenge for cause should
have been sustained. *Rothschild* v. *The State*, above
referred to. Inasmuch, however, as the accused had not
exhausted his challenges at the time, and was relieved of
the juror by means of a peremptory challenge, and inasmuch
as it does not clearly appear that any material error, to the
prejudice of the defendant, was committed by the ruling of
the court, we deem it unnecessary to consider the question
further than to say that in this we find no such error as
would warrant an interference with the verdict and judg-
ment.

As to the juror McKinney, when the bill of exceptions
was presented to the judge for his approval and signature
to the ruling that he was a competent juror, the following
was appended by the judge : " I sign this bill of exceptions
with this addition and explanation. The juror here named
was accepted by the defendant, he up to that time having
made but one peremptory challenge ; and further, the an-
swers of the juror clearly showed that he had no settled
opinion as to the guilt or innocence of the defendant."
We, under these circumstances, cannot say that the juror
was not competent. The same may be said as to the juror
Shropshire, except that he was disposed of by a peremptory
challenge by the defendant. The judge, in giving a bill of
exceptions to his overruling a challenge for cause, says :
" This bill of exceptions is correct as far as it goes ; but the
juror, in addition to what is here mentioned, said that the
opinion he had formed was formed merely from rumor and
newspaper reports ; he did not sit as a juror."

Another bill of exceptions recites that the following
named persons who had been summoned on the special
*venire*, to wit, McKinney, Harrell, and Howard Hicks,

each being under examination touching his qualifications to
serve as a petit juror on the trial of the case, answered
"that he had served as a petit juror in the District Court of
Johnson County for one week within the six months next
preceding their said examination, to wit, at the present term
of this court." On this examination these jurors were by
the defendant challenged for cause, and the challenge was
overruled by the court, and the defendant was ruled to ac-
cept said jurors or challenge them peremptorily. The bill
of exceptions further states that, after this ruling had been
made by the court, "the defendant exhausted his per-
emptory challenges in obtaining the eight jurors, and four
persons were placed upon the jury, for the trial of this cause,
after defendant's peremptory challenges were exhausted."

The challenge of these jurors was based upon that por-
tion of sect. 26 of the jury law of 1876 (p. 83) which is as
follows : The fact that a juror "has served as a juror for
one week in the District Court within six months preced-
ing," shall be good cause for challenge. This identical
question has been under consideration and passed upon by
this court no less than three several times, viz. : in *Welch*
v. *The State*, 3 Texas Ct. App. 413 ; in *Garcia* v. *The*
*State*, 5 Texas Ct. App. 337 ; and again in *Tuttle* v. *The*
*State*, 6 Texas Ct. App. 556. In each of these cases the
proper construction of that portion of the jury law quoted
above was determined, and each time to the effect that the
word *preceding* manifestly related to a term of the court
preceding the term at which the jurors were offered, and
not to the present term or the term at which the question
was raised. We see no reason to depart from the rulings
heretofore made on this subject. To make this objection
tenable, it should have been made to appear that the juror
or jurors involved in the controversy had served as a juror
or jurors for one week in the District Court within the six
months next preceding the term of the court at which they
had been summoned as jurors and at which the question

arose, and not, as stated in the bill of exceptions, "for one week within the six months next preceding their said examination."

It is worthy of remark, in this connection, that it is in the bill of exceptions, and in the extract set out above, "and thereafter the defendant exhausted his peremptory challenges in obtaining the first eight jurors upon the trial, and four persons were placed upon the jury, for the trial of this cause, after defendant's peremptory challenges were exhausted," that the appellant attempts to show that his rights had been prejudiced by the rulings of the court below in forming the jury for his trial. The substance of the statement is that four persons were placed upon the jury after the defendant's peremptory challenges had been exhausted; but there is no pretence that either of these four persons were in any manner objectionable to the defendant, nor is it made to appear that they, or either of them, would have been challenged peremptorily if his challenges had not been exhausted. By this ruling it is not seen that the defendant was deprived of any right guaranteed to him by the law.

4. With reference to the charge of the court. It is the duty of the judge who presides at a trial for a felony, to charge the jury the law of the case as applicable to the pleadings and the evidence adduced on the trial. It is incumbent on him to give to the jury, in plain and intelligible language, appropriate instructions as to every feature of the testimony, and as to every legitimate view they may take of the evidence. In determining the sufficiency of the charge in the present case, we have carefully considered the testimony, with all the rulings of the court in its admission or rejection, in the light of the whole case as made by the record, in order to determine whether the rights of the defendant have been properly guarded in the charge or not.

The main objections urged to the charge are, that the charge on circumstantial evidence was not sufficiently full

and explicit, and that a more pointed charge on the subject of an *alibi* should have been given. In order to place themselves in proper position to avail themselves of any error to be pointed out, the defendant's counsel excepted to the charge as given, and asked the court to give such additional charges as, in the opinion of counsel, were applicable to the facts in evidence before them. It may not be amiss to premise that, as to the fact that Mrs. Hester, the deceased, came to her death at the time and place and in the manner set out in the indictment, there is but one point controverted, and that one is, who was the guilty perpetrator of the deed? The appellant and two other persons were charged by different indictments, each with the murder. One of these indicted persons, Bowden by name, became a witness against the appellant. If Bowden's testimony be true, there can be no doubt that he was, at least, one of the guilty parties; agreeably to his testimony, he and the appellant together concocted the plan which was carried out, and which resulted in a most foul and brutal assassination of an unsuspecting and helpless woman. Among the principal grounds relied on for a reversal of the judgment is that there is an absence of sufficient testimony in corroboration of the testimony of Bowden to warrant a conviction of the appellant.

These general remarks with regard to the evidence are offered in order to determine the sufficiency of the charge. As to the general features of the charge, the definition of murder generally, and of murder on express malice, and the like, are correct enunciations of law, and so as to the province of the jury to determine the weight of the testimony and the credibility of the witnesses. The charge confined the jury to the investigation of the case as one of murder in the first degree.

The charge as to principals in crime is as follows: "All persons are principals who are guilty of acting together in the commission of an offence. When an offence is actually

committed by one person, but another is present, and, knowing the unlawful intent, aids by acts, or encourages by words or gestures the person actually engaged in the commission of the unlawful act, or who, not being actually present, kept watch so as to prevent the interruption of the person engaged in the commission of the offence, such person so aiding, encouraging, or keeping watch is a principal offender; and so are all persons principal offenders who engage in procuring aid, arms, or means of any kind to assist in the commission of an offence, while others are executing the unlawful act; or who advise or agree to the commission of the offence, and are present when the same is committed, whether they aid or not in the illegal act." This portion of the charge is immediately succeeded by the following : —

" 12. If, from the evidence in this case, you are satisfied that the defendant, Samuel H. Myers, fired the shot that took the life of Mrs. Mary A. Hester, or that he was connected with the killing in such manner as to make him a principal offender as explained above; and if you further believe from the evidence that the killing was done with express malice as above explained, and there is no proof of circumstances of alleviation, excuse, or justification, you will then find him guilty of murder in the first degree, and so say by your verdict, without adding more. But if the evidence fails to satisfy you that he either fired the fatal shot or was connected with the killing in such manner as to make him a principal, or you have a reasonable doubt upon that subject, or have a reasonable doubt as to the killing being done with express malice, you will then, in either of these events, find him not guilty."

We are of opinion the charge first above set out is an accurate statement of the law of principals, and in almost the exact language of the Penal Code. Title III., chap. 1, arts. 74 to 78 inclusive. It is argued on the part of the prosecution that the paragraph marked 12, copied above, is

so restrictive in its terms that the jury could not have been misled by any failure to give further explanatory charges ; that the charge was favorable to the accused, and that under it the jury were required to acquit unless they were satisfied, beyond a reasonable doubt, either that the defendant fired the shot that took the life of Mrs. Hester, or that he was so connected with its perpetration as to make him a principal, as much so as if he had fired the fatal shot. We concur in this opinion. It would have been very difficult, if not impracticable, for the court to have given in this connection a proper charge on *alibi* without trenching upon the province of the jury or endangering the charge to an imputation of obscurity, or as being calculated to confuse and mislead the jury.

On the subject of circumstantial evidence the charge of the court was as follows : —

" 13. To authorize a conviction on circumstantial evidence alone, the circumstances should not only be consistent with the guilt of the defendant, but inconsistent with any other rational conclusion or reasonable hypothesis consistent with the facts proved. The facts constituting the chain of circumstances should not only be consistent with each other and the defendant's guilt, but each fact necessary to show his guilt should be established by satisfactory evidence ; and the facts and circumstances, taken altogether, should be of a conclusive nature, and leading, upon the whole, to a satisfactory conclusion, and producing, in effect, a reasonable and moral certainty of his guilt. Can the facts and circumstances you find from the evidence to be true exist, and can you, in view of these facts and circumstances, reasonably conclude that the defendant is innocent of the crime charged? If so, you should acquit him ; otherwise, if they leave you without reasonable doubt as to his guilt, you should convict."

In *McMillan* v. *The State*, *ante*, p. 142, a charge quite similar to this was held to be vitiated by the interrogation

contained above, and marked with an interrogation point, as tending to make the innocence and not the guilt of the accused depend upon the conclusiveness of circumstantial testimony; but in that case the charge did not, as in this, call the minds of the jury back to the subject of a reasonable doubt as to his guilt, and tell them that if they had such doubt they should acquit; and besides, the word " innocent " was used in a different sense. The charge of the court on the conclusiveness of circumstantial evidence, in order to warrant a conviction on that character of testimony alone, was substantially correct, and was, in effect, the same as that asked by the defendant's counsel. The charge was not defective. *Hampton* v. *The State*, 1 Texas Ct. App. 652; *Williams* v. *The State*, 41 Texas, 209; *Rodriguez* v. *The State*, 5 Texas Ct. App. 256; *Harrison* v. *The State*, 6 Texas Ct. App. 42; and *Hunt* v. *The State*, ante, p. 212, where the whole subject was reviewed.

The court was requested to instruct the jury to this effect: " The jury are instructed if they believe, from the evidence, that the defendant was at the house of Thomas Myers at the time of the murder of Mrs. M. A. Hester, or if the evidence of his being at the house of Thomas Myers at the time of said murder produces on your minds a reasonable doubt of the guilt of the defendant, you will find him not guilty." Referring again to what is said as to the general charge as to principal offenders, we are of opinion that this charge was unnecessary; the subject of reasonable doubt was kept before the jury.

We have not attempted to discuss all the various views of the case presented in the voluminous briefs and discussed in the several interesting oral arguments of counsel for the appellant; but whether they have been discussed or not, they have been very thoughtfully and attentively considered, and such as have not been discussed separately are not believed to be of sufficient importance to have any material bearing on the result. One other feature of the case, how-

ever, requires special notice. That is the fact that the principal witness against the appellant was evidently a guilty participant, if not himself the principal offender. It is claimed that his testimony is unworthy of being considered in any aspect of the case. On this subject the court instructed the jury as follows: "A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offence committed, and the corroboration is not sufficient if it merely shows the commission of the offence, — that is, if it merely shows that a murder has been committed, — without any evidence outside of the testimony of the accomplice tending to connect the defendant with the crime. If there is other evidence in the case, besides the testimony of the accomplice, tending to connect the defendant with the crime charged, the corroboration would then be sufficient; otherwise it would not. And if the testimony of the accomplice is thus corroborated, and the evidence then, taken altogether, satisfies you, beyond a reasonable doubt, of the guilt of the defendant, you should convict; otherwise you should acquit."

It is contended that this charge was defective in that it gave the jury no definition of the meaning of the term *accomplice;* and we are referred to *Roach* v. *The State,* 4 Texas Ct. App. 46, to support the position. We are of opinion the cases are not parallel; and from the prominence given to the witness Bowden, as to the fact of his having been indicted for the murder, and having procured the arrest of the defendant, and being the only witness to whom, from any thing seen in the record, the charge could with any sort of propriety apply, we are of opinion the jury could not have misunderstood or been misled by the charge. As a proposition of law, agreeably to art. 741 of the Code of Procedure, and adjudications thereunder, the charge was correct.

The authorities are not agreed as to the amount and extent

of corroboration required in order to warrant a conviction on the testimony of an accomplice who, in the sense of a witness, is any direct participant in the crime; but with this we need have no concern, for the reason that the statute has settled it by declaring the extent of the corroboration necessary. It is " other evidence tending to connect the defendant with the offence committed." We do not understand that this requires that the different matters testified to by the accomplice are to be supported, each one, by other testimony to the same isolated facts, but that it must tend to connect the defendant with the offence committed.

After a careful consideration of the entire case as made by the record, and judged in the light of all the arguments, we fail to discover any such error as required of the District Court the granting of a new trial, or which would warrant this court in reversing the judgment. It is our opinion that the appellant has been fairly and legally tried and convicted, and we cannot do otherwise than affirm the judgment; and it is so ordered.

*Affirmed.*